# Illinois Official Reports

## Appellate Court

---

### *In re Keyon R.*, 2017 IL App (2d) 160657

---

| | |
|---|---|
| Appellate Court Caption | *In re* KEYON R., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Merrick R., Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2-16-0657 |
| Filed | February 23, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 14-JA-264; the Hon. Mary Linn Green, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Nicholas O. Meyer, of Meyer & Horning, P.C., of Rockford, for appellant.<br><br>Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Ivan O. Taylor, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.<br>Presiding Justice Hudson and Justice Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1     The trial court found respondent, Merrick R., to be an unfit parent and ruled that it was in the best interest of his minor child, Keyon R., to terminate his parental rights. Respondent appeals only the unfitness finding.[1] For the reasons that follow, we reverse.

¶ 2                                  I. BACKGROUND

¶ 3     We include those facts necessary to understand the proceedings. We will augment the facts as needed in the "Analysis" section of this opinion. Keyon, born on October 26, 2006, was adjudicated a neglected minor on November 12, 2014.[2] On March 4, 2015, the Illinois Department of Children and Family Services (DCFS) was granted custody and guardianship of Keyon, and the court ordered respondent, who was incarcerated, to cooperate with the services that DCFS implemented on respondent's behalf. However, DCFS, through its contracting agency Lutheran Social Services of Illinois (LSSI), never assessed respondent for services or provided him with a service plan. The agency did not consider returning Keyon to respondent a viable option because of respondent's convictions of a sexual offense involving bodily harm. The agency also did not offer respondent any visitation with Keyon. The court, following various permanency review hearings, found that respondent made "unsatisfactory progress" in following "service plans." On February 8, 2016, the court found that respondent failed to make "reasonable progress" toward Keyon's return. On March 24, 2016, the State filed a motion to terminate respondent's parental rights on the following grounds: he failed to maintain a reasonable degree of interest, concern, or responsibility as to Keyon's welfare (750 ILCS 50/1(D)(b) (West 2014)) (count I); he failed to make reasonable progress toward Keyon's return to him during any nine-month period after the adjudication of neglect (11/12/14 to 8/12/15 and/or 6/24/15 to 3/24/16) (750 ILCS 50/1(D)(m)(ii) (West 2014)) (count III[3]; and he was depraved (750 ILCS 50/1(D)(i) (West 2014)) (count IV). Respondent remained incarcerated throughout these proceedings.

¶ 4     At the hearing on the State's motion to terminate parental rights, Gina Gauthier, a child welfare specialist with LSSI, testified that Keyon was removed from his mother's custody in July 2014 because two of her other children (by fathers other than respondent) had been placed with DCFS.

¶ 5     Gauthier testified that LSSI did not assess or recommend any services for respondent, "due to the nature of his crime." Gauthier identified the crime as "sexual assault with bodily harm," but she was unsure whether the victim was a child or an adult.

¶ 6     Gauthier testified that respondent stayed in contact with her and asked about Keyon. She testified that, if he were not incarcerated, she would not consider allowing him to have unsupervised visits with Keyon "due to the nature of his crime." For the same reason, she stated that respondent would not be a suitable placement for Keyon. Gauthier explained that

---

[1]This is an accelerated appeal pursuant to Illinois Supreme Court Rule 311(a) (eff. Mar. 8, 2016). Our disposition was due within 150 days after the filing of the notice of appeal, or January 16, 2017. However, because briefing was delayed by respondent's counsel's motion for leave to withdraw, which we denied, good cause is shown for the delay in filing the disposition.

[2]Keyon was removed from his mother's custody due to her alleged neglect.

[3]The counts against respondent were numbered I, III, and IV.

LSSI never explored the possibility of returning Keyon to respondent, "because we did not see [respondent] as a viable return home [*sic*]." Similarly, LSSI did not offer respondent the opportunity to participate in team meetings or other "staffings." Gauthier acknowledged that respondent's father provided Keyon with clothing and school supplies.

¶ 7    On cross-examination, Gauthier admitted that the agency made no effort to facilitate visits between Keyon and respondent, due to the distance involved, although she did not know where respondent was incarcerated. Gauthier testified that she never offered respondent visitation, despite respondent's expressed desire for such visits.

¶ 8    Gauthier testified that she spoke with respondent soon before he was scheduled to be paroled but that she then lost contact with him. According to Gauthier, respondent's father told her that "they were not able to find suitable housing [for respondent] and so he remained incarcerated."

¶ 9    The State offered no further testimony, but it submitted into evidence DCFS's "indicated packet." The State also submitted into evidence, over respondent's objection, People's Exhibits 6 and 7, which were certified paper copies of the electronic records reflecting respondent's convictions of aggravated criminal sexual abuse in Cook County, Illinois. The State then rested. The court took judicial notice of the neglect petition, the order granting temporary custody of Keyon to DCFS, the order adjudicating Keyon a neglected minor, the dispositional order, and the order following the February 8, 2016, permanency review hearing, with the finding that respondent had not made reasonable progress toward Keyon's return.

¶ 10   Respondent testified that he was currently incarcerated at the Centralia Correctional Center, although he was due to be paroled in a few days. He was originally incarcerated in 2007, released on probation in 2008, and then reincarcerated in 2010. He described his crime as "criminal sexual abuse." He testified that he had been falsely charged. Respondent planned to work in his father's construction business and attend college upon his release. Respondent acknowledged that he would have to register as a sex offender.

¶ 11   Respondent testified that he contacted his father to provide whatever Keyon needed. Respondent kept aware of Keyon's needs through Keyon's foster parent, who was a relative. Respondent testified that he understood that his conviction of a sex crime would interfere with his ability to parent Keyon.

¶ 12   The court found that LSSI did not recommend any services for respondent, due to his having been "charged with sexual assault with bodily harm." The court further found that respondent was not allowed unsupervised visits and that LSSI determined that he was not a "placement option." The court also found that the State failed to prove the allegations of count I (failure to maintain a reasonable degree of interest, concern, or responsibility). However, the court found that the State proved the allegations of count III (failure to make reasonable progress toward Keyon's return) and count IV (depravity). With respect to depravity, the court stated that "[respondent's] conviction [*sic*] and the basis for it [*sic*] certainly raises to [*sic*] a deficient sense of moral rectitude." The court also found that respondent had to register as a sex offender. It further found that "this has raised a rebuttal [*sic*] presumption which went unrebutted."

¶ 13   The court then proceeded to a best interest hearing at which it found that it was in Keyon's best interest to terminate respondent's parental rights. Respondent filed a timely notice of appeal.

- 3 -

¶ 14                                    II. ANALYSIS

¶ 15     Respondent argues that (1) the finding of depravity was against the manifest weight of the evidence, where the State did not present any evidence other than the certified copies of his convictions; (2) respondent was denied due process by LSSI's failure to assess him for services and to provide a service plan; and (3) the finding that respondent failed to make reasonable progress toward the goal of returning Keyon to respondent was against the manifest weight of the evidence.

¶ 16     Termination of parental rights under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2014)) is a two-step process. *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 1. The State first must establish by clear and convincing evidence one ground of parental unfitness from those listed in section 1(D) of the Adoption Act (Act) (750 ILCS 50/1(D) (West 2014)). *In re B.B.*, 386 Ill. App. 3d 686, 698 (2008). A single ground of unfitness under section 1(D) is sufficient to support a finding of unfitness. *Julian K.*, 2012 IL App (1st) 112841, ¶ 2. If the trial court finds a parent unfit, the court must conduct a second hearing to determine, by a preponderance of the evidence, whether it is in the best interest of the minor to terminate parental rights. *B.B.*, 386 Ill. App. 3d at 698. A reviewing court will not disturb a trial court's decision at a termination hearing unless it is against the manifest weight of the evidence. *Julian K.*, 2012 IL App (1st) 112841, ¶ 65. A trial court's decision is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence. *B.B.*, 386 Ill. App. 3d at 697-98.

¶ 17     We first examine the evidence of depravity. Count IV of the motion to terminate parental rights alleged that respondent was depraved pursuant to section 1(D)(i) of the Act. That section provides, in pertinent part, that there is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least three felonies and at least one of the convictions took place within five years of the filing of the motion to terminate parental rights. 750 ILCS 50/1(D)(i) (West 2014).

¶ 18     The State introduced certified paper copies of the electronic docket entries in Cook County case Nos. 07-CR-0933501 (Exhibit 6) and 07-CR-0933401 (Exhibit 7). Exhibit 6 consisted of a list of 16 counts of an "indictment/information." Each count was identified only by a shorthand name of the offense and the corresponding statute. The victim's name did not appear, although certain counts described the offense as involving a "family member" under 13 years of age. It is impossible to tell if all of the counts related to the same victim. The dates of the offenses were not listed. No details of the crimes were included. Exhibit 7 was identical in appearance to Exhibit 6, except that it listed 37 counts.

¶ 19     Taken together, Exhibits 6 and 7 showed the following. On April 2, 2008, respondent pleaded guilty to three counts of aggravated criminal sexual abuse, Class 2 felonies. The remaining counts were dismissed. Respondent was sentenced to concurrent terms of 2 years' probation and 341 days' incarceration in the Cook County jail, with credit for time served. On January 13, 2009, the State filed a petition for violation of probation, and respondent was later sentenced to 22 days in the county jail. On December 21, 2009, and June 30, 2010, two more petitions for violation of probation were filed. On October 29, 2010, respondent was resentenced on the three felony convictions to consecutive 4-year terms of incarceration in the Illinois Department of Corrections. The factual bases of the probation violations were not shown on the exhibits.

¶ 20 Gauthier testified that she did not know whether the victim of the crimes to which respondent pleaded guilty was an adult or a child. In respondent's testimony, he referred to "victims," plural. Under cross-examination, respondent did not deny the accusation that he was "a convicted child sex offender," but the State did not elicit the details of his offenses. The court found that the State proved depravity solely from the certified copies of the convictions.

¶ 21 The State concedes that respondent's convictions did not raise the statutory presumption of depravity, contrary to the court's finding. According to Exhibits 6 and 7, respondent pleaded guilty to three Class 2 felonies, and convictions were entered on those counts on April 2, 2008. The State filed the motion to terminate parental rights on March 24, 2016. The presumption arises only if one of the several felony convictions took place within five years of the filing of the motion. Here, all three felony convictions were entered eight years prior to the filing of the motion.

¶ 22 Where there is no rebuttable presumption of depravity, the trial court is to decide the issue based on all of the evidence in the record. *In re Addison R.*, 2013 IL App (2d) 121318, ¶ 26. In such circumstances, the trial court must closely scrutinize the evidence of the respondent's character, as well as his or her credibility, in making a determination of depravity. *Addison R.*, 2013 IL App (2d) 121318, ¶ 26. "Depravity" has been defined as " 'an inherent deficiency of moral sense and rectitude.' " *In re M.B.C.*, 125 Ill. App. 3d 512, 514 (1984) (quoting *In re Abdullah*, 85 Ill. 2d 300, 305 (1981)). "Acts constituting depravity must be of sufficient duration and repetition to establish moral deficiency and either an inability or unwillingness to conform to accepted morality." *M.B.C.*, 125 Ill. App. 3d at 514. Although a single felony conviction is insufficient to establish depravity, a pattern of criminality is sufficient. *M.B.C.*, 125 Ill. App. 3d at 514. Another way of expressing the concept of a "pattern of criminality" in this context is a "course of conduct that indicates a moral deficiency and an inability to conform to accepted moral standards." *In re J'America B.*, 346 Ill. App. 3d 1034, 1047 (2004).

¶ 23 Given that the State's evidence did not raise even a rebuttable presumption of depravity, we cannot say that the certified copies of the convictions, standing alone, are clear and convincing proof of depravity. Other than the names of the offenses, we have no information about them to put respondent's behavior in context, such as when they occurred, where they occurred, or the victim's or victims' age(s) and relationship to respondent. This evidence is far short of that found sufficient to establish depravity in the following cases. In *Addison R.*, 2013 IL App (2d) 121318, ¶¶ 25-26, the presumption disappeared when the respondent-mother rebutted it with evidence that she was rehabilitated. Nevertheless, we held that the evidence of depravity was clear and convincing where the State introduced evidence that the unrepentant mother led police on a three-county car chase after she ingested cocaine and during which she wrecked a house trailer and drove her car into the body of a police detective, seriously injuring the officer. *Addison R.*, 2013 IL App (2d) 121318, ¶ 27. In *M.B.C.*, decided before the legislature added the rebuttable presumption, the State proved that the respondent was convicted of armed robbery and rape in the early 1950s, served a 20-year prison sentence, and then was again arrested for rape, sexual assault, and intimidation. *M.B.C.*, 125 Ill. App. 3d at 514.

¶ 24 In contrast, depravity was not proved by clear and convincing evidence in *In re Sanders*, 77 Ill. App. 3d 78, 82 (1979), where the only evidence against the mother and the father was their multiple criminal convictions. The father had been convicted of burglary, resisting a peace officer, aggravated battery, deceptive practices, and criminal damage to property. *Sanders*, 77

Ill. App. 3d at 81. The mother had been convicted of driving without a valid driver's license, theft of services, and disorderly conduct. *Sanders*, 77 Ill. App. 3d at 82. The court in *Sanders* held that, while the criminal record of an individual is "highly persuasive" evidence of depravity, it is only one factor to be considered, along with a "close[ ] scrutin[y]" of the character and credibility of the person. *Sanders*, 77 Ill. App. 3d at 82. A criminal record reveals a past rejection of social mores, but courts must allow for rehabilitation. *Sanders*, 77 Ill. App. 3d at 82.

¶ 25 In the present case, respondent was due to be released from prison within days after the hearing. He had a job with his father's construction company waiting for him, and he desired to attend his local junior college. He had demonstrated an ongoing interest in Keyon's welfare while he was incarcerated, and he saw to it that his own father provided for Keyon's material needs in his absence. There was no evidence that respondent was addicted to drugs or alcohol. The State introduced nothing negative about respondent's character except his past convictions. While we do not deprecate the seriousness of his crimes or deny that they raise concerns, the State failed to present evidence bearing on their commission, thus shedding no light on respondent's character. We cannot guess at the missing details.

¶ 26 Moreover, to hold that the type of offense that led to respondent's convictions, without more, constitutes depravity would usurp the legislature's function. In section 1(D)(i) of the Act, the legislature created a conclusive presumption of depravity for convictions of certain enumerated offenses. 750 ILCS 50/1(D)(i) (West 2014). Aggravated criminal sexual abuse is not one of those enumerated offenses. If we were to say that respondent's convictions of aggravated criminal sexual abuse, standing alone, constituted depravity, we would add to the list a crime that the legislature did not countenance. This is contrary to the notion that the judiciary has no supervision over the legislative branch. See *Fletcher v. City of Paris*, 377 Ill. 89, 96 (1941). Accordingly, we hold that the State failed to prove unfitness on the ground of depravity.

¶ 27 We next consider respondent's argument that the finding that he failed to make reasonable progress toward the goal of returning Keyon to respondent was against the manifest weight of the evidence. Respondent contends that DCFS never recommended any services for him to complete upon which his progress could be measured. We agree, making it unnecessary to address his due process argument. See *People v. Hampton*, 225 Ill. 2d 238, 243-44 (2007) (cases should be decided on nonconstitutional grounds whenever possible; constitutional issues should be addressed only if necessary to decide a case).

¶ 28 Section 1(D)(m)(ii) of the Act provides that a parent's failure to make reasonable progress toward the return of the child during any nine-month period following the adjudication of neglect is a ground of unfitness. 750 ILCS 50/1(D)(m)(ii) (West 2014). The statute further provides that if DCFS established a service plan to correct the conditions that were the basis for the child's removal from the parent, and if those services were available, then failure to make reasonable progress includes the parent's failure to substantially fulfill his or her obligations under the service plan. 750 ILCS 50/1(D)(m)(ii) (West 2014).

¶ 29 Our supreme court interpreted these provisions in *In re C.N.*, 196 Ill. 2d 181 (2001). "Progress" means "movement or advancement toward a goal." *C.N.*, 196 Ill. 2d at 211. The goal is the return of the child. *C.N.*, 196 Ill. 2d at 211. Thus, section 1(D)(m)(ii) requires that a parent make demonstrable movement toward the goal of reunification. *C.N.*, 196 Ill. 2d at 211. The benchmark to determine progress encompasses the parent's compliance with the service

plans and the court's directives, in light of the conditions that gave rise to the removal of the child and in light of other conditions that later become known that would prevent the court from returning custody of the child to the parent. *C.N.*, 196 Ill. 2d at 216-17. Service plans are an "integral" part of the statutory scheme, and compliance with the service plans is "intimately tied" to a parent's progress toward the return of the child. *C.N.*, 196 Ill. 2d at 215-17. Indeed, the failure to make reasonable progress includes the failure to substantially fulfill the terms of the service plans. *C.N.*, 196 Ill. 2d at 217.

¶ 30    Here, in terminating respondent's parental rights, the court noted that respondent was "found to have not made reasonable progress" in the permanency review order of February 8, 2016, and that he made "unsatisfactory progress" in fulfilling the service plans of March 26, 2015, October 23, 2015, February 8, 2016, and May 14, 2016. What the court failed to take into account, however, was that respondent was *never* assessed for services and was *never* given a service plan. Those facts were documented in LSSI's written reports. Also, Gauthier testified: "There were no services recommended for [respondent] due to the nature of his crime." Even when the guardian *ad litem* proposed to Gauthier that respondent should have asked for services, Gauthier responded that services would not have been offered. She testified: "That option was never really explored with him because we did not see him as a viable return home [*sic*]." LSSI did not offer visitation or even advise respondent of the agency's change of address. To use respondent's lack of compliance with nonexistent services—services that were consciously and intentionally withheld—to terminate his parental rights is paradoxical.

¶ 31    Respondent's incarceration was another basis for the court's finding that he did not make reasonable progress. Specifically, the court found that he was not paroled earlier because he did not secure appropriate housing. The record does not support that finding. Gauthier testified that respondent's father told her that "they" were not able to find suitable housing. It is not clear if "they" meant respondent and his father, or parole authorities. Respondent testified that he was going to be released in August 2015, but that he "ended up staying [in prison]" because he "didn't have the proper housing, so I ended up doing my parole time." That testimony does not shed light on why proper housing was not secured. In any event, the continued period of incarceration was irrelevant to the finding of lack of reasonable progress, as Gauthier made clear that LSSI would never consider reuniting respondent with Keyon under any circumstances.

¶ 32    The agency predetermined that respondent was unfit. It refused to assess him or to give him a service plan, even though DCFS regulations require both an assessment and the development and implementation of a service plan. 89 Ill. Adm. Code 315.80, adopted at 23 Ill. Reg. 2539 (eff. Feb. 1, 1999). Gauthier testified that visitation was not offered because of the distance between Keyon's residence and respondent's location, but she had no idea where respondent was incarcerated. LSSI did not offer respondent the opportunity to participate in child and family team meetings. He was never notified of any meetings. Gauthier testified that respondent was made aware of administrative case reviews and that he did not "indicate one way or the other" whether he wanted to participate. However, she also testified that she was not "honestly sure" whether he would be able to participate from prison by telephone.

¶ 33    We note that section 1(D)(s) of the Act (750 ILCS 50/1(D)(s) (West 2014)) provides that a parent who has been repeatedly incarcerated as a result of criminal convictions, and is prevented from discharging his or her parental responsibilities due to such incarceration, is unfit. Here, respondent was initially incarcerated in the Cook County jail, and then he violated

probation, resulting in further incarceration in the county jail, and then, finally, he was sentenced to prison. Respondent admitted at the hearing that his incarceration interfered with his ability to parent Keyon. However, the State chose to allege unfitness not pursuant to section 1(D)(s), but due to respondent's lack of reasonable progress. We thus review the evidence that the State adduced to prove lack of reasonable progress, mindful that the termination of parental rights is a "permanent and complete severance of the parent-child relationship" that requires clear and convincing proof. *C.N.*, 196 Ill. 2d at 208. The clear and convincing standard requires proof greater than a preponderance but not *quite* approaching beyond a reasonable doubt. *In re D.T.*, 212 Ill. 2d 347, 362 (2004). That standard was not met.

¶ 34 Illinois recognizes that the interest of parents in the care, custody, and control of their children is the oldest of the fundamental liberty interests guaranteed by law. *In re M.H.*, 196 Ill. 2d 356, 362 (2001). Consequently, all participants must be vigilant not to relax established standards. Accordingly, we hold that the State failed to prove either ground of unfitness as alleged, and we reverse the judgment of the trial court terminating respondent's parental rights.

¶ 35                                                    III. CONCLUSION

¶ 36 For the foregoing reasons, the judgment of the circuit court of Winnebago County is reversed.

¶ 37 Reversed.