2020 IL App (2d) 200138-U
No. 2-20-0138
Order filed July 8, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* A.T., a minor | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| | ) | |
| | ) | No. 18 JA 151 |
| | ) | |
| (The People of the State of Illinois, Petitioner- | ) | Honorable |
| Appellee, v. Patricia T., Respondent- | ) | Mary Linn Green, |
| Appellant). | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's order finding respondent-mother unfit was not against the manifest weight of the evidence when respondent-mother failed to complete any of the services recommended in the family service plan.

¶ 2    Respondent, Patricia T., appeals from the trial court's order terminating her parental rights to her two-year-old son, A.T. She argues that the State did not establish by clear and convincing evidence that she was unfit and that the order terminating her parental rights should therefore be reversed. We hold that the trial court's order was not against the manifest weight of the evidence and affirm.

¶ 3                                  I. BACKGROUND

¶ 4    A.T. was born prematurely at 34 weeks gestation on May 19, 2018. At the time of A.T.'s birth, respondent was 18 years old and herself in the custody of the Department of Children and Family Services (DCFS). Both she and A.T. tested positive for marijuana in their system, and earlier in her pregnancy, respondent tested positive for cocaine.

¶ 5    On June 4, 2018, the State filed a neglect petition, alleging that A.T. was neglected because he was born with marijuana in his system and he had an injurious environment due to respondent's substance abuse, mental health issues, and lack of a stable home. See 705 ILCS 405/2-3(1)(c), (b) (West 2018). Respondent subsequently waived her right to a shelter care hearing, and the trial court found that there was probable cause to believe that A.T. was neglected. The court awarded temporary custody of A.T. to DCFS and ordered that the department have the discretion to place A.T. in traditional foster care.

¶ 6    Respondent failed to appear at both the adjudication and dispositional hearings. A.T. was adjudicated neglected on September 28, 2018, and on October 18, the court entered a disposition order, which required respondent to cooperate with all services recommended by DCFS.

¶ 7    The trial court held two permanency reviews over the next year. Respondent did not attend the first permanency review, held on April 1, 2019. After accepting evidence and hearing argument, the court found that respondent had not made reasonable efforts toward reunification and that the goal of return home in 12 months was appropriate. Respondent was present for the second permanency hearing, held on September 30, 2019. There, the court found that respondent had made neither reasonable efforts nor reasonable progress toward reunification and changed the goal to substitute care pending court determination of termination of parental rights.

¶ 8    The State filed a three-count motion to terminate respondent's parental rights on December 10, 2019. In its motion, the State alleged that respondent was an unfit person under section 1(D)

of the Adoption Act because respondent failed (1) to maintain a reasonable degree of interest, concern, or responsibility as to A.T.'s welfare; (2) to make reasonable efforts to correct the conditions that caused A.T. to be removed during a nine-month time period after the court adjudicated him neglected; and (3) to make reasonable progress toward the return of A.T. to her care during a nine-month time period after the court adjudicated him neglected. The State identified two nine-month time periods for the second and third count: September 28, 2018, to June 28, 2019; and December 28, 2018 to September 30, 2019.

¶ 9     On January 9, 2020, the trial court held a hearing on the State's motion. Respondent was not present, and the court denied respondent's counsel's motion for a continuance. Upon the State's request, the court took judicial notice of its previous orders from the temporary custody, adjudication, disposition, and permanency hearings. In addition, the State introduced into evidence the integrated assessment and three family service plans through the testimony of the family's case worker, Megan Denk. Denk testified that respondent was "not fully" cooperative with the agency and failed to complete all of the recommended services, including substance abuse assessment and treatment, mental health assessment and treatment, domestic violence assessment and services, and parenting education courses. She also failed to maintain safe housing, living with either her mother or an unspecified friend, and failed to comply with every scheduled drug drop. Regarding visitation, Denk testified that respondent missed "about half" of the visits with A.T. and did not provide food, clothes, or toys for him. Denk did note that respondent was "appropriate" with A.T. when she did visit with him. After hearing argument, the Court announced it would make its decision on respondent's fitness and potentially hear the State's argument on best interests on January 23.

¶ 10    Respondent was present on January 23, and before the trial court announced its decision, respondent's counsel requested to reopen the fitness hearing to allow respondent to testify. The court denied the motion but did allow respondent to speak on why she was not present at the fitness hearing:

"[RESPONDENT]: Oh, I tried to get here in time, but I guess you guys had already had court around 9:00-ish. I had called [Denk's] supervisor to see because I couldn't find the paper with the names and the court dates and the time and everything. And [Denk] told me when I got here that I had already had court and it was over with. So *** I had called [Denk] and she had told me the court date today and time.

* * *

THE COURT: Well, let me ask you this. You knew that it was coming up, why didn't you start a few days before that?

[RESPONDENT]: Because it's not easy to get in contact with them. It goes by days. I have asked for things in the previous, I never got them. I got my own social security card by myself, my birth certificate by myself. I asked all of my caseworkers to do that. Never got it.

THE COURT: You have an attorney, too, though.

* * *

THE COURT: I think there were enough resources that you could have reached out for besides even Ms. Denk, like your own attorney or even the attorney for your child.

[RESPONDENT]: I know, but I need better ways or more organized. I'm not in the most proper home and I'm always bouncing as of now trying to find a home. *** So it's not easy to keep up with papers or stuff like that."

The court then found respondent unfit as to each of the three counts in the State's motion.

¶ 11    The trial court then proceeded to conduct the best-interests hearing. After hearing testimony and argument, the trial court found that it was in A.T.'s best interests that respondent's parental rights be terminated and so ordered. Respondent filed a timely notice of appeal on February 18, 2020.[1]

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, respondent contends that the trial court erred in finding her unfit on all three counts in the State's motion. She argues that the State failed to meet its burden of proving her unfit by clear and convincing evidence because the family service plans contradicted Denk's testimony regarding visitation and the court did not view the State's evidence in light of respondent's age or traumatic past. We review her argument below.

¶ 14    Termination of parental rights under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2018)) is a bifurcated process. *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. The State must first establish by clear and convincing evidence at least one ground of parental unfitness, as listed in section 1(D) of the Adoption Act (Act) (750 ILCS 50/1(D) (West 2018)). *In re B.B.*, 386 Ill. App. 3d 686, 698 (2008). If the trial court finds a parent unfit, then the court conducts a second hearing to determine, by a preponderance of the evidence, whether terminating a parent's

---

[1] Pursuant to Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), we must issue our decision within 150 days of the filing of the notice of appeal, in this case by July 17, 2020.

rights is in the best interests of her child. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. Reviewing courts do not disturb a trial court's decision at a termination hearing unless it is against the manifest weight of the evidence. *In re H.S.*, 2016 IL App (1st) 161589, ¶ 23. A court's decision is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is so unreasonable, arbitrary, or not based on the evidence. *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 66.

¶ 15    Here, the trial court found respondent unfit under three subsections of the Act: failure to maintain a reasonable degree of interest, concern, or responsibility as to A.T.'s welfare (750 ILCS 50/1(D)(b)); failure to make reasonable efforts to correct the conditions that were the basis for removal of A.T. during any nine-month period following adjudication of neglect (*Id.* § 1(D)(m)(i)); and failure to make reasonable progress toward the return of A.T. to her during any nine-month period following the adjudication of neglect (*Id.* § 1(D)(m)(ii)).

¶ 16    Turning to the first ground of unfitness found by the trial court, we note that because subsection (b) is written in the disjunctive, a parent's failure to maintain a reasonable degree of interest *or* concern *or* responsibility in her child will support a finding of unfitness. 750 ILCS 50/1(D)(b); *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004). In rendering a finding under this subsection, the court "does not focus on the parent's success but, rather, the reasonableness of her efforts and takes into account the parent's difficulties and circumstances." *In re Nicholas C.*, 2017 IL App (1st) 162101, ¶ 24. A parent is not fit merely because she has demonstrated some interest or affection toward the child; rather, the interest, concern, or responsibility must be objectively reasonable. *In re B'Yata I.*, 2014 IL App (2d) 130558-B, ¶ 31. "Noncompliance with an imposed service plan, a continued addiction to drugs, a repeated failure to obtain treatment for an addiction,

and infrequent or irregular visitation with the child have all been held to be sufficient evidence warranting a finding of unfitness under subsection (b)." *Jaron Z.*, 348 Ill. App. 3d at 259.

¶ 17    Respondent initially argues that the State failed to produce clear and convincing evidence of her unfitness under subsection (b) because Denk's testimony regarding her missing "about half" of the scheduled visits is belied by the three family service plans admitted into evidence.[2] The first family service plan, drafted on June 1, 2018, contains no narrative on visitation. The second, drafted on January 10, 2019, states that respondent "missed 8 out of the 23 visits scheduled since July." The third, drafted on June 19, 2019, states that respondent was "more consistent" with visitation. Respondent argues that, contrary to Denk's testimony, the family service plans merely demonstrate that she "miss[ed] some visits with her son," which cannot sustain the trial court's conclusion that she failed to maintain a reasonable degree of interest, concern, or responsibility in A.T.'s welfare, particularly in light of her circumstances. We disagree.

¶ 18    A review of Denk's testimony reveals that she did not remember an exact number of missed visits, and surmised it was "about half" but less than "three-quarters." Indeed, the documented number of missed visits contained in the January 2019 family service plan shows respondent attended 65% of the scheduled visits, missing only 35%. However, the three admitted family service plans detail the respondent's visitation with A.T. from July 2018 to June 2019. Denk testified in January 2020. Presuming visitation was still offered to respondent, she may have missed additional scheduled visits in the six months that followed, which would not have been

_____

[2] The exhibits admitted in the fitness and best-interests hearings are not included in the record on appeal. However, the family service plans are included in the common law record, and thus we were able to review them in analyzing respondent's argument.

included in the documentary evidence in front of the court. Finally, we note that the trial court is in a far better position to assess Denk's credibility regarding her testimony of respondent's history of visitation with A.T. and will not disrupt that on appeal when, as here, the opposite view is not clearly apparent. See *In re B.J.*, 316 Ill. App. 3d 193, 199 (2000).

¶ 19    Furthermore, the trial court did not solely rest its finding that respondent did not maintain a reasonable degree of interest, concern, or responsibility on respondent's missed visitation. The court also determined that although respondent had a history of substance abuse, domestic violence, and mental health issues, she failed to cooperate with DCFS to address those issues. A.T. was born with marijuana in his system and respondent tested positive for cocaine earlier in her pregnancy. She was the victim of domestic violence with an on-again-off-again boyfriend. She had outbursts in the hospital after A.T. was born and had a history of depression and self-harm. Despite these concerns, respondent did not complete a single drug drop and admitted to continually smoking marijuana after A.T.'s birth. She did not begin a substance abuse or domestic violence assessment, did not complete a mental health assessment, did not maintain a stable, safe residence, and never advanced to unsupervised visits. In short, respondent failed to complete *any* of the recommended services.

¶ 20    We are cognizant of, and sympathetic to, respondent's own traumatic childhood and nominal familial support, but that does not excuse her failure to meaningfully engage with the recommended services to reunite with her son. In light of the foregoing, we cannot say that the trial court's finding defendant unfit pursuant to subsection (b) was against the manifest weight of the evidence. When parental rights are terminated based upon clear and convincing evidence of a single ground of unfitness, reviewing courts need not consider the additional grounds of unfitness

found by the trial court. See *In re Gwynne P.,* 215 Ill. 2d 340, 363 (2005). We therefore do not discuss the other grounds of unfitness found by the court.

¶ 21                                    III. CONCLUSION

¶ 22    For the reasons stated, we affirm the trial court's finding of unfitness and the order terminating respondent's parental rights.

¶ 23    Affirmed