2021 IL App (2d) 200484-U
No. 2-20-0484
Order filed January 22, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* J.L., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| | ) | |
| | ) | No. 17-JA-402 |
| | ) | |
| (The People of the State of Illinois, Petitioner- | ) | Honorable |
| Appellee, v. Steven L., Respondent- | ) | Mary Linn Green, |
| Appellant). | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Bridges and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court's finding that respondent-father was unfit to parent the minor because he was depraved was not against the manifest weight of the evidence.

¶ 2     Respondent, Steven L., appeals from the circuit court's order terminating his parental rights to his 11-year-old daughter, J.L. Respondent contends that the State failed to present the clear and convincing evidence necessary to prove him unfit on the two counts in the amended expedited petition. Respondent does not contest the court's adjudication of neglect or best interests findings, instead he argues that because the State failed to meet its burden in finding him unfit, the court should not have conducted a best interests hearing. Because the court's finding that respondent was depraved was not against the manifest weight of the evidence, we affirm.

¶ 3                                     I. BACKGROUND

¶ 4   J.L. was born in June 2009 and lived with respondent, her biological father, and Jessica R.,her biological mother (whose parental rights are not at issue in this appeal), for the first five monthsof her life. In November 2009, respondent was incarcerated, and J.L. subsequently became a wardof the Department of Children and Family Services (DCFS) in 2010. J.L. never resided with respondent again. J.L. instead stayed with her maternal uncle and aunt from 2010 until June 2015 when Jessica successfully petitioned the court to regain guardianship of J.L. Respondent was not a part of those proceedings.

¶ 5   On December 27, 2017, the State filed a neglect petition, alleging J.L. was a neglected minor pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2016) ), for three reasons: (1) Jessica failed to cure the conditions for which the minor's siblings were in the care of DCFS, (2) Jessica had a history of domestic violence, and (3) Jessica had a substance abuse problem, which prevented her from properly parenting. Relevant to this appeal, in the petition, the State also requested that the circuit court terminate respondent's parental rights and to appoint DCFS as legal guardian with the power to consent to adoption, alleging that respondent was unfit for two reasons: (1) he was depraved, pursuant to section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2016) ) and (2) he was incapable of discharging his parental responsibilities because of his repeated incarceration, pursuant to section 1(D)(s) of the Adoption Act. 750 ILCS 50/1(D)(s) (West 2016). The petition also alleged that it was in J.L.'s best interests to terminate respondent's parental rights. At the timethe petition was filed, respondent was incarcerated in the Illinois Department of Corrections (DOC), and the court found him defaulted for purposes of the shelter care hearing.

¶ 6 On May 3, 2018, the State filed an amended neglect petition, now alleging J.L. was a neglected minor for four reasons: (1) her environment was injurious to her welfare; (2) there was an act of domestic violence in the home in the presence of J.L., thereby placing her at risk of harm; (3) Jessica drove on a suspended/revoked license with J.L. unsecured in the car and got into a car accident; and (4) Jessica was arrested without an adequate care plan for J.L., leading to J.L. not receiving the proper or necessary support as required by law for her well-being. 705 ILCS 405/2-3(1)(a), (b). In the amended neglect petition, the State again requested that the circuit court terminate respondent's parental rights and to appoint DCFS as legal guardian with the power to consent to adoption, alleging the same two counts of unfitness for respondent. Additionally, the petition also requested that the court find it was in J.L.'s best interests to terminate respondent's parental rights. At the time the amended petition was filed, respondent was no longer incarcerated.

¶ 7  The circuit court held the combined hearing to adjudicate neglect, determine unfitness, and decide whether it was in J.L.'s best interests to terminate respondent's rights (see 705 ILCS 405/2-21(5) (West 2016) ) over the course of five days from August 2018 through March 2019. During the hearing, the State elicited testimony from several police officers, an Illinois State Police Department forensic scientist, the family's caseworker, and Jessica, and introduced over 90 exhibits into evidence. The evidence submitted to the court included certified records of respondent's five felony convictions (04 CF 4036 on July 22, 2005 (violation of the Illinois Controlled Substances Act, a Class 4 felony); 09 CF 3701 on May 10, 2010 (burglary to a motor vehicle, a Class 2 felony); 09 CF 3702 on May 10, 2010 (aggravated battery, a Class 2 felony); 12 CF 594 on July 10, 2012 (burglary, a Class 2 felony); and 14 CF 599 (residential burglary, a Class 1 felony) ), two indicated packets of neglect, and service plans involving J.L. and a sibling during a prior neglect proceeding.

¶ 8 Respondent testified on his own behalf, stating that he had been employed at a publishing company since April 9, 2018, had completed a multi-week parenting program in July 2018, and had enrolled in an online college for business administration classes. He further testified that visits between him and J.L. were going well and that J.L. had become more comfortable with him as visits progressed. On cross-examination, respondent admitted that he only had contact with J.L. sporadically from when he was incarcerated in 2011 until March of 2018, when he had supervised visits scheduled for once a week. He also testified that he did not provide any fiscal support to J.L. during his incarceration and would only occasionally send letters when he was able.

¶ 9 Due to the length of time the case was pending, the circuit court held a permanency review hearing, which took place in January 2019. After receiving evidence and hearing argument, the court set the goal for J.L. to return home within 12 months and found that respondent had not made reasonable efforts but deferred making a finding on his progress.

¶ 10 On March 1, 2019, the circuit court announced its decision on unfitness, noting that it was "working off of" the "Amended Neglect Petition filed on or about May 5, 2018[.]" The court found that the State proved both counts of unfitness against respondent by clear and convincing evidence and made some specific factual findings from the "highlights" of its notes. As to respondent, the court initially noted that the State provided evidence of five felony convictions. The court continued:

"[Respondent] also testified and said that he was in the Illinois Department of Corrections for 44 months continuously and was discharged in *** February of 2018. He further testified that that entire time that he was in the DOC he did not see the minor at all. By my calculations, the 44 months includes, *** six months in 2014, 12 months in 2015, 12 months in 2016, 12 months in 2017 and two months in 2018.

He also testified that from March to November 2018 he did not see the minor very often. He said he first saw her after being released from IDOC in March of 2018.

*** He testified that [J.L.] lived with him for the first five to six months. She was removed from his care due to abuse and neglect in 2010.

That case was closed in 2014 when guardianship and custody was given to the aunt and uncle. Subsequent to that, in *** 2015, the mother petitioned and received guardianship of the child back again. The father was not involved in that. The father was incarcerated during that time.

He further testified that *** as of August 15, 2011, he was out of custody, and the minor had not been returned to him. He indicated in his testimony that he was out of custody from 2012 to 2014—when we know that for half of that year, of 2014, he was taken back into IDOC. He testified that he did not give any child support regularly for the minor. And while he was in DOC, he did have a few phone calls with the minor and also sent her cards and letters while he was incarcerated.

He also agreed that from 2010 to 2014 he did not engage in any services to have the minor returned to him. The only service he has completed is one parenting class, which he completed in 2018.

* * *

To his benefit, [respondent] did testify that he has been employed now for not quite a year and has not been re-arrested since he was released from DOC in February of [2018]. He also is having visitation with the minor at this time.

*** As to father, the call [on the presumption of depravity] was a bit closer for this court.

There was some information as to what he has been doing since he was released from IDOC. The Court does not believe that it was persuasive enough or enough evidence to rebut the presumption of depravity."

¶ 11 The circuit court then heard testimony from the caseworker and respondent on whether it was in J.L.'s best interests to terminate respondent's parental rights. On May 20, 2019, the court found "as to the best interest[s] that the State ha[d] not met its burden or proven that it would be in [J.L.'s] best interest[s] that the parental rights of [respondent] be terminated." The court expressed to respondent how rare ("almost a nonoccurrence") such a finding was and explained that the burden was on the parents now to "work together for [J.L.'s] best interest[s]." The court ordered guardianship and custody to remain with DCFS, with the discretion for visitation and the goal to remain for J.L. to return home in 12 months.

¶ 12 The circuit court conducted two permanency review hearings over the course of the next year and found that respondent failed to make reasonable efforts or progress toward the goal of return home. On March 9, 2020, the State filed a second motion for termination of parental rights and power to consent to adoption. Because the court had already determined respondent to be unfit, the court only heard testimony on whether it was in J.L.'s best interests to terminate respondent's parental rights. Over the course of two days, the State elicited testimony from the caseworker and J.L.'s foster mother. Respondent testified on his own behalf. After hearing the arguments of counsel, the circuit court found it was in J.L.'s best interests that respondent's parental rights be terminated. Respondent timely appealed.

¶ 13                                  II. ANALYSIS

¶ 14 Respondent only challenges the circuit court's findings of unfitness on appeal. Respondent does not challenge the court's adjudication of neglect nor its finding that it was in J.L.'s best

interests to terminate his parental rights. However, he argues that because the State failed to establish by a preponderance of the evidence that he was unfit, we should reverse the court's finding of unfitness and the order terminating his parental rights. We examine his claims below.

¶ 15 The Juvenile Court Act establishes the procedures by which the State may petition to terminate a parent's rights. Generally, following a circuit court's adjudication of abuse, neglect, or dependency from the State's neglect petition, proceedings to terminate parental rights proceed under a separate petition in two additional steps. *In re N.B.*, 2019 IL App (2d) 180797, ¶ 25. First, the court determines whether the parent is unfit under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). Upon such a finding, the court proceeds to hold a best-interests hearing, where the court must determine whether it is in the best interests of the minor to terminate the parent's parental rights. *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 16 Section 2-21(5) of the Juvenile Court Act permits a circuit court to combine these hearings and terminate parental rights at the initial dispositional hearing when the original or an amended complaint contains a request to terminate parental rights and appoint a legal guardian with the power to consent to adoption. 705 ILCS 405/2-21(5) (West 2018). In addition, the court must make several findings before it may terminate a parent's parental rights at the dispositional hearing: (1) the court must find by a preponderance of the evidence that the minor is abused, neglected, or dependent; (2) the court must find by clear and convincing evidence that the parent is unfit; and (3) the court must determine that it is in the best interests of the minor to terminate parental rights and appoint a legal guardian. *Id.* § 2-21(5)(i-iv). Here, the State invoked section 2-21(5) by including in both its original and amended neglect petitions a request to terminate respondent's parental rights and appoint DCFS as legal guardian with the power to consent to adoption.

¶ 17 As stated above, respondent only challenges the circuit court's finding of unfitness. The court found that respondent was unfit for two reasons: (1) depravity and (2) an incapability of discharging his parental responsibilities because of his repeated incarceration. 750 ILCS 50/1(D)(i), (s) (West 2018). We will not overturn a court's findings of unfitness unless the decision is against the manifest weight of the evidence. *In re N.B.*, 2019 IL App 2d 180797, ¶ 30. "A trial court's decision is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 18 We first address the circuit court's finding of unfitness because respondent was depraved. Our supreme court has defined depravity as an inherent deficiency of moral sense and rectitude. *In re Addison R.*, 2013 IL App (2d) 121318, ¶ 23 (quoting *Stalder v. Stone*, 412 Ill. 488, 498 (1952)). Depravity must be shown to exist at the time of the petition to terminate parental rights, and the acts constituting depravity must be "of sufficient duration and of sufficient repetition to establish a deficiency in moral sense and either an inability or an unwillingness to conform to accepted morality." (Internal quotations omitted.) *In re J.A.*, 316 Ill. App. 3d 553, 561 (2000).

¶ 19 Section 1(D)(i) of the Adoption Act provides a rebuttable presumption of a parent's depravity when "the parent has been criminally convicted of at least 3 felonies ***; and at least one of these convictions took place within 5 years" of the filing of the petition to terminate parental rights. 750 ILCS 50/1(D)(s) (West 2018). The rebuttable presumption "creates 'a *prima facie* case as to the particular issue in question and thus has the practical effect of requiring the party against whom it operates to come forward with evidence to meet the presumption.' " *In re J.A.*, 316 Ill. App. 3d at 562 (quoting *Diederich v. Walters*, 65 Ill. 95, 100 (1976)). Once the parent produces evidence opposing the presumption, the presumption ceases to operate, and the issue is determined

on the evidence adduced at trial as if no presumption had ever existed. *In re Addison R.*, 2013 IL App (2d) 121318, ¶ 24. The burden of proof, however, remains with the State. *In re J.A.*, 316 Ill. App. 3d at 562-63.

¶ 20 A determination of depravity requires the circuit court to closely scrutinize the character and credibility of the parent. *In re Adoption of K.B.D.*, 2012 IL App (1st) 121558, ¶ 201. Becausethe circuit court is generally in the best position to assess the credibility of the witnesses, reviewing courts will not reweigh or reassess credibility on appeal. *In re A.F.*, 2012 IL App (2d) 111079, ¶ 40. In reviewing the arguments and record before us, we are mindful that every matter concerning parental unfitness is *sui generis* and must be decided on the particular facts and circumstances presented. *In re Gwynne P.*, 215 Ill. 2d 340, 543 (2005).

¶ 21 Here, respondent does not contest that the presumption of depravity was sufficiently established by the State's evidence. He argues, however, that he presented evidence which overcame the presumption of depravity, and the State did not produce further clear and convincing evidence that he was depraved without the presumption. In response, the State avers that the circuit court considered other evidence beyond respondent's felony convictions in finding that the depravity presumption had not been rebutted.

¶ 22 The pertinent neglect petition was filed in May 2018. Thus, the State had to establish that respondent's behavior at that time was of a sufficient duration and sufficient repetition to establish that he was deficient in moral sense and either an inability or an unwillingness to conform to accepted morality. With respect to respondent, the State presented evidence of his five felony convictions, with dates ranging from 2005 through 2014. The State also presented orders from the 2010 neglect petition involving J.L., in which guardianship of J.L. was awarded to her maternal uncle and aunt, and orders from a 2012 neglect case, in which the court found respondent unfit for

three counts, including depravity, and terminated respondent's parental rights to J.L.'s sibling. Additionally, the State submitted a 2014 family service plan, detailing respondent's history of neglect, drug addiction, and criminal activity. Finally, the State submitted the integrated assessment for the present case.

¶ 23 To rebut the presumption of depravity, respondent testified on his own behalf. He testifiedthat he had maintained housing since his release from DOC in February 2018 and had been employed since March 2018. Respondent began visits with J.L. in March 2018 and reported that they had steadily gotten better as she became more comfortable with him. Respondent had also completed a parenting class in July of 2018 and took college courses while incarcerated.

¶ 24 Given that respondent produced evidence to rebut the presumption of depravity, the circuit court was to decide the issue based on the evidence adduced at the hearing. *In re Addison R.*, 2017 IL App (2d) 121318, ¶ 26. Our review of the record establishes that in addition to the five felony convictions, including violations of the Controlled Substances Act, aggravated battery, and residential burglary, the State submitted evidence that respondent had a history of domestic violence with both J.L. and Jessica. He reportedly pulled J.L. by the hair when she was an infant and, in 2014, attempted to set a house on fire during a dispute with Jessica. The State's evidence also demonstrated that he had a history of drug dependency, which he admitted fueled the domestic altercations. The State's evidence also demonstrated that his parental rights to another child were terminated, in part, because the circuit court found him depraved. In total, the State's evidence demonstrated that respondent's conduct over the course of J.L.'s life repeatedly established that he had an unwillingness to conform to accepted morality.

¶ 25 Although the circuit court misspoke in making its determination, by stating that respondent's evidence was "not enough" to "rebut the presumption of depravity[,]" we hold that

the record demonstrates that court's finding of unfitness based on depravity was done after it closely scrutinized respondent's character and credibility. *In re Addison R.*, 2013 121318, ¶ 26. The court noted that respondent presented "some information" as to what he had been doing after his release from DOC and that finding him unfit was a "closer call" as a result of that information. However, weighing the State's evidence against the evidence that respondent presented, we cannot say that the opposite result was clearly evident.

¶ 26 Although we can—and do here—affirm a circuit court's unfitness finding if the evidence supports any one of the statutory grounds of unfitness (*In re Richard H.*, 376 Ill. App. 3d 162, 165 (2007)), we take this opportunity to briefly address the court's second finding: that respondent was incapable of discharging his parental responsibilities because of his repeated incarceration. A parent may be found unfit due to his repeated incarceration if

> "[t]he child is in the temporary custody of [DCFS], the parent is incarcerated at the time the petition or motion for termination of parental rights is filed, the parent has been repeatedly incarcerated as a result of criminal convictions, and the parent's repeated incarceration has prevented the parent from discharging his or her parental responsibilities for the child." 750 ILCS 50/1(D)(s) (West 2018).

Here, the second element, respondent's incarceration at the time the petition was filed, was not met. At the time the State filed its amended neglect petition, which the trial court explicitly noted it was "working off of[,]" respondent had been released from DOC for over two months. Because respondent was no longer incarcerated when the pertinent (amended) petition was filed, the State necessarily could not establish that element.

¶ 27 Rather than concede this point on appeal, the State contends that because respondent was still on parole when it filed the amended petition, it established that respondent was in legal

custody. While that may be true, "custody" is not synonymous with "incarceration." A review of the relevant subsection of the statute establishes such a fact; for this particular ground of unfitness to be established, the "child [must be] in the temporary *custody* of [DCFS]" while "the parent is *incarcerated* \*\*\*[.]" *Id.* (Emphasis added.) Thus, we agree with respondent that the circuit court's finding of unfitness based on section 1(D)(s) of the Adoption Act was against the manifest weight of the evidence.

¶ 28 Ultimately, however, because the court did not err in finding respondent unfit based on his depravity, we cannot say that the circuit court's decision of unfitness was against the manifest weight of the evidence. Because respondent only challenged the findings of unfitness on appeal and did not address the adjudication of neglect or the best interests decision, we will not discuss them.

¶ 29                                III. CONCLUSION

¶ 30 For the reasons stated, we affirm the circuit court's findings of unfitness and the order terminating respondent's parental rights.

¶ 31 Affirmed.