NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260366-U

NO. 4-26-0366

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 25, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* G.R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Peoria County |
| Petitioner-Appellee, | ) | No. 23JA277 |
| v. | ) | |
| Hope R., | ) | Honorable |
| Respondent-Appellant). | ) | Daniel M. Cordis, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court granted appellate counsel's motion to withdraw and affirmed,
finding the trial court's termination of respondent's parental rights was not against
the manifest weight of the evidence.

¶ 2    In September 2025, the State filed a petition for termination of parental rights

against respondent, Hope R., the mother of G.R. (born in December 2023). In March 2026, the

trial court granted the petition and terminated Hope's parental rights.

¶ 3    On appeal, appellate counsel filed a motion to withdraw pursuant to *Anders v.

California*, 386 U.S. 738 (1967), arguing Hope's appeal presents no potentially meritorious

issues for review. We grant the motion and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5    On December 5, 2023, the State filed a petition alleging G.R. was neglected

because her environment was injurious to her welfare (705 ILCS 405/2-3(1)(b) (West 2022)).

The petition alleged Hope had been found unfit in Peoria County case Nos. 18-JA-345, 18-JA-346, 19-JA-364, and 21-JA-90, due to, *inter alia*, ongoing domestic violence and "lack of parental ability." Hope surrendered her parental rights in the first three cases, and her parental rights were terminated in the fourth case. There had been no subsequent finding of fitness, and Hope had not completed any services that would result in a finding of fitness.

¶ 6        The petition alleged that, on August 6, 2021, Hope grabbed Alonzo M., G.R.'s putative father, by his neck and squeezed, and she reported Alonzo choked her and threatened to kill her. On October 10, 2021, Hope contacted law enforcement to have them remove Alonzo from her apartment, alleging that Alonzo "threatened to shoot her apartment." Alonzo subsequently reported Hope had not been taking her medications for her bipolar diagnosis. Hope was previously indicated by the Illinois Department of Children and Family Services (DCFS) for "Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare by Neglect" on August 30, 2018, October 31, 2018, October 15, 2019, and March 17, 2021. Hope completed a parenting capacity assessment in March 2021, after which the examiner expressed concerns regarding Hope's parenting capacity and her ability to meet children's physical and emotional needs.

¶ 7        On December 6, 2023, the trial court placed G.R.'s temporary custody with DCFS. Hope stipulated to the petition's contents, and the court entered a dispositional order making G.R. a ward of the court.

¶ 8        On September 24, 2025, the State petitioned to terminate Hope's parental rights, alleging she was an unfit parent because she failed to make reasonable progress toward G.R.'s return to her care during the nine months from November 26, 2024, through August 26, 2025. See 750 ILCS 50/1(D)(m)(ii) (West 2024).

¶ 9                          A. Fitness Hearing

¶ 10          The trial court conducted a fitness hearing on March 9, 2026. Melissa Shaw testified she was the caseworker assigned to G.R.'s case. Hope was expected to cooperate with DCFS, maintain stable housing and income, comply with monthly drug drops, and successfully complete individual counseling, a domestic violence class, and a parenting class. During the relevant nine-month period, Hope completed just five out of nine scheduled drug drops. One of those drops tested positive for tetrahydrocannabinol (THC). Hope reported using both marijuana and ecstasy, despite being pregnant. Shaw encouraged Hope to complete a drug and alcohol assessment, but she did not do so. Hope refused to discuss her unborn child with Shaw. Hope also refused to permit Shaw to conduct a home safety check without a court order, and she would often raise her voice at Shaw, swear at her, and call her names.

¶ 11          Shaw testified that visits between Hope and G.R. went well when they occurred, but Hope often canceled visits with little advanced notice, or she would fail to call ahead to confirm visits. Hope missed 13 out of 32 possible visits with G.R. during the nine-month period. She also failed to attend four of her weekly individual counseling sessions in July and August 2025. Hope indicated she was uncertain who was the father of her unborn child, but she believed it was De'Juan J. Hope reported De'Juan "was involved in criminal activity," namely, credit card fraud. Hope insisted she was not in relationship with him.

¶ 12          Hope maintained stable employment and housing. Prior to the nine-month period, Hope completed a domestic violence course and two parenting courses. G.R. appeared to be comfortable with Hope, and she would cry when Hope left the room.

¶ 13          During closing arguments, the guardian *ad litem* (GAL) argued that during the final six months of the nine-month period, Hope did not make progress toward G.R.'s return to

her care because she stopped engaging consistently with visits and her individual counseling. The GAL acknowledged Hope's pregnancy likely factored into Hope's decreased engagement, but he emphasized that a parent's reasonable progress is judged by an objective standard. The GAL argued that, at the end of the nine-month period, G.R. was further from returning to Hope's custody than she was before it.

¶ 14　　　　　On March 23, 2026, the trial court found the State showed, by clear and convincing evidence, that Hope failed to make reasonable progress during the relevant nine-month period. The court acknowledged some of Hope's actions demonstrated progress toward reunification, including completing a domestic violence class and two parenting classes and maintaining stable housing and income. However, Hope missed 13 out of 32—more than one-third—of the possible visits with G.R. during the relevant period. Hope stopped regularly attending her counseling sessions. Hope missed four out of nine scheduled drug drops, and one of the drops she completed tested positive for THC. Hope also failed to cooperate with DCFS, as she refused to permit Shaw to conduct a home-safety check until a court order was entered, and she failed to maintain regular contact with Shaw. Because G.R. could not be returned to Hope's custody in the near future, the court found Hope had failed to make reasonable progress.

¶ 15　　　　　　　　　　　B. Best-Interests Hearing

¶ 16　　　　　The matter proceeded to a best-interests hearing. Shaw testified G.R. had lived with her foster family since she was six months old. G.R. lived with the same foster family as her biological siblings, and her foster parents provided appropriate food, shelter, and clothing. G.R. had not known any parental figures other than her foster parents. G.R. was "[v]ery bonded" to her foster parents, and she turned to them for her needs. Shaw described G.R.'s relationship with her foster parents as "[v]ery loving." G.R. had five biological siblings, four of whom had been

adopted by her foster parents. The remaining sibling was younger than G.R. and was currently living with the family as a foster child. G.R.'s foster parents provided consistency and security, and they wanted to provide G.R. permanency in the form of adoption.

¶ 17 The trial court found the State had met its burden and granted its termination petition. The court found all the applicable best-interests factors favored terminating Hope's parental rights so G.R.'s foster parents could adopt her. The court placed special emphasis on the fact that G.R. was living with the same foster family as five of her biological siblings. The court asserted:

> "[G.R.] is so young. This is her only placement. She's living with siblings. She only knows her foster parents as parental figures, and so the risks that would go along with being in substitute care are certainly minimal. I think flipping that on its head, the risks attendant to not being in that foster home would be far more significant."

¶ 18 This appeal followed.

¶ 19 II. ANALYSIS

¶ 20 In May 2026, Hope's appointed appellate counsel filed a motion seeking leave to withdraw as counsel. Hope did not file a response. Counsel asserts no arguably meritorious issue can be raised on appeal. We agree.

¶ 21 A. Standard of Review

¶ 22 To terminate an individual's parental rights, the State must first show the parent is unfit by clear and convincing evidence and then show that terminating their parental rights serves the child's best interests by a preponderance of the evidence. *In re D.F.*, 201 Ill. 2d 476, 494-95 (2002); *In re D.T.*, 212 Ill. 2d 347, 366 (2004). "The trial court is given broad discretion and

great deference in matters involving minors." *In re E.S.*, 324 Ill. App. 3d 661, 667 (2001). We will not reverse an unfitness finding unless it is against the manifest weight of the evidence, as such a determination "involves factual findings and credibility determinations that the trial court is in the best position to make." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48. Likewise, we will not reverse a best-interests finding unless it is against the manifest weight of the evidence. *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 53. "A decision is against the manifest weight of the evidence when the opposite conclusion is clearly apparent." *Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 23                                    B. Unfitness Finding

¶ 24        The Adoption Act provides several grounds on which a trial court may find a parent unfit. See 750 ILCS 50/1(D) (West 2024). Those grounds include a parent's failure to "make reasonable progress toward the return of the child *** during any 9-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(m)(ii) (West 2024). "[R]easonable progress" means "measurable or demonstrable movement toward the goal of the return of the child." *In re L.L.S.*, 218 Ill. App. 3d 444, 460-61 (1991). We have previously described "reasonable progress [a]s an objective standard," measuring whether "the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstratable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original and internal quotation marks omitted.) *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88.

¶ 25        There is no issue of arguable merit concerning the trial court's unfitness finding. The evidence supports the court's determination that Hope failed to make reasonable progress toward G.R.'s return during the nine months from November 26, 2024, through August 26, 2025.

See 750 ILCS 50/1(D)(m)(ii) (West 2024). Hope's recommended services included individual counseling, cooperating with DCFS, and completing monthly drug drops. During the relevant nine-month period, Hope attended her counseling sessions with decreasing frequency. She failed to maintain regular communication with Shaw, and she refused to permit Shaw to conduct a home-safety check before a court order was entered. She only completed five out of nine monthly drug drops, and one of those drops tested positive for THC. And she attended fewer than one-third of her scheduled visits with G.R. during the relevant period. While Hope maintained stable housing and income, and she completed a domestic violence class and two parenting classes, Hope did not make sufficient progress such that G.R. could have been returned to her care in the near future. See *F.P.*, 2014 IL App (4th) 140360, ¶ 88. Accordingly, the court's unfitness finding was not against the manifest weight of the evidence. *In re A.L.*, 409 Ill. App. 3d 492, 500 (2011).

¶ 26                    C. Best-Interests Determination

¶ 27            Once a trial court finds a parent unfit, it must consider whether terminating their parental rights serves the child's best interests. "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364 (2004). When considering whether termination of parental rights serves a child's best interests, the trial court must consider several factors within "the context of the child's age and developmental needs." 705 ILCS 405/1-3(4.05) (West 2024). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity,

continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072 (2006).

See 705 ILCS 405/1-3(4.05) (West 2024).

¶ 28    There is no issue of arguable merit regarding the trial court's best-interests finding. G.R. began living with her foster family when she was six months old. She lived with five of her biological siblings, four of whom her foster parents had already adopted. G.R.'s foster parents provided her with appropriate food, shelter, and clothing, and she was bonded to them. G.R. had a loving relationship with her foster parents, and she looked to them to meet her needs. G.R.'s foster parents were the only parental figures she had ever known, and they wished to provide her permanency in the form of adoption. Based on this evidence, the court determined it was in G.R.'s best interests to terminate Hope's parental rights. We cannot say "the opposite conclusion is clearly apparent," nor can we find the court's decision to be "unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 29                                III. CONCLUSION

¶ 30    We agree with appointed appellate counsel this appeal presents no issue of arguable merit. Accordingly, for the reasons stated, we grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 31    Affirmed.