NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220457-U

NO. 4-22-0457

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 25, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.A., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | No. 19JA108 |
| | ) | |
| v. | ) | Honorable |
| Dominique A., | ) | David A. Brown, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, granting appellate counsel's motion to withdraw and finding the trial court's termination of respondent's parental rights was not against the manifest weight of the evidence.

¶ 2    In September 2020, the State filed a petition for termination of parental rights against respondent, Dominique A., the father of J.A. (born August 17, 2015). In April 2022, the trial court granted the State's petition and terminated respondent's parental rights.

¶ 3    On appeal, appellate counsel has filed a motion to withdraw his representation of respondent pursuant to *Anders v. California*, 386 U.S. 738 (1967), arguing respondent's appeal presents no potentially meritorious issues for review. We grant the motion and affirm the trial court's judgment terminating respondent's parental rights.

¶ 4    I. BACKGROUND

¶ 5    In May 2019, the State filed a petition for adjudication of wardship, alleging J.A., then age three, was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2018)) in that the minor's environment was injurious to his welfare. The petition alleged respondent was found unfit in Tazewell County case No. 17-JA-107, and there had been no subsequent finding of fitness, and he completed no services sufficient to restore him to minimal parenting.

¶ 6    According to an integrated assessment dated August 9, 2019, the State indicated respondent on May 9, 2017 (Tazewell County case No. 17-JA-107), with substantial risk of physical injury/environment injurious to the health and welfare of a minor. Respondent had made death threats to his daughter, the child's mother, and the mother's family on social media when he also had access to firearms. Respondent had a history of cocaine and marijuana use. He failed to comply with related court ordered tasks, including the completion of drug and alcohol testing, counseling, parenting classes, domestic violence classes, and obtaining stable housing. The trial court ultimately found respondent unfit, and according to the integrated assessment, there had been no subsequent finding of fitness. The case was closed in December 2018.

¶ 7    The integrated assessment also provided that J.A. had been placed in his maternal grandmother's home and that her former husband, J.A.'s maternal grandfather, provided significant support in caring for the child. J.A. stayed with his grandmother during the day and his grandfather during evenings and through the night. A maternal half-sibling of J.A. also lived in his grandmother's home. J.A. spent weekends with respondent's grandmother.

¶ 8    Respondent was provided frequent opportunities to visit J.A. at the home of J.A.'s maternal grandfather or when J.A. visited respondent's grandmother. Respondent reported he had been J.A.'s primary caregiver for much of J.A.'s life, with the help of respondent's

grandmother. However, in the integrated assessment, the reporter noted "it is suspected" respondent's grandmother had been the primary caregiver.

¶ 9 In response to the petition for adjudication of wardship, respondent filed an answer in which he stipulated to the petition. In August 2019, the trial court conducted a combined adjudicatory and dispositional hearing. The trial court found respondent had stipulated to a finding of unfitness and entered an order to that effect. In its dispositional order, the court found it in the minor's best interest that he be made a ward of the court and placed in the custody and guardianship of the Department of Children and Family Services (DCFS).

¶ 10 A September 2019 status report noted respondent began attending counseling to address domestic violence issues and registered to begin a parenting class. Later permanency reports noted respondent continued to attend counseling and classes, but his visits with J.A. became inconsistent. Respondent visited J.A. on weekends when respondent's grandmother picked up J.A. from foster care, but he often did not make the effort to travel to the foster home to visit J.A. despite having a good relationship with J.A.'s maternal grandparents.

¶ 11 Following a February 2020 permanency review hearing, the trial court entered an order finding respondent continued to be unfit and had not made reasonable efforts and progress toward a goal of returning J.A. home. The court noted respondent was not progressing in services and was sporadic with drug tests and counseling. The following month, respondent was arrested for unlawful use of a weapon. In May 2020, a caseworker received an email from an investigator concerning a DCFS hotline call expressing concerns about the safety of children living in respondent's home. The caller reported respondent threatened to slap his paramour's five-month-old child, threatened her three-year-old child, and threatened the paternal side of that child's family. Respondent was seen on a video recording walking through the house with guns while

making the threats, and photographs of respondent with guns appeared on social media. The reporter stated there were multiple guns in the home and it was unknown whether the children had access to them. Respondent was reported to have sent messages to people stating he was going to harm his paramour's children. The investigator reported the State subsequently indicated respondent for substantial risk of physical injury/environment injurious to the health and welfare of a minor.

¶ 12 Permanency reports filed in August 2020 showed respondent's counselor unsuccessfully discharged him from counseling on July 31, 2020, due to noncompliance. The reports also noted respondent's caseworker had not had any contact with respondent since May 14, 2020. The reports revealed respondent had been asked to complete 10 drug drops during the current review cycle, and of the 5 he completed, all were positive for marijuana. An additional drop completed for the newest DCFS investigation was also positive for marijuana. Respondent's visits with J.A. continued, but he did not take full advantage of offered visits at the foster home. By that time, J.A. had been placed in the home of his maternal grandfather, who was willing to be a permanent placement.

¶ 13 In September 2020, the State filed a petition for termination of parental rights, seeking a finding of unfitness and termination of respondent's parental rights. The State alleged respondent was unfit because he failed to make reasonable progress toward the return of the child within nine months after the adjudication of neglect (August 15, 2019, through May 15, 2020) (750 ILCS 50/1(D)(m)(ii) (West 2020)). In March 2022, respondent filed an answer to the petition, in which he stipulated to the allegation in the petition. Accordingly, the trial court (1) entered an order finding respondent unfit for failing to make reasonable progress toward the return of J.A. during the nine-month period of August 15, 2019, through May 15, 2020, and

(2) set a best-interest hearing for April 28, 2022. J.A.'s mother surrendered her rights and is not a part of this appeal.

¶ 14        On April 4, 2022, respondent was arrested for possession of a firearm by a felon, resisting arrest, and traffic offenses. Respondent had also failed to appear in a previous criminal action.

¶ 15        On April 12, 2022, the State filed a best interest report, noting J.A.'s maternal grandfather was willing to adopt him. His grandfather provided assistance when J.A. was placed with his maternal grandmother, and he currently met J.A.'s needs of food, shelter, clothing, education, and healthcare. J.A. reported he wanted to see his parents "sometimes" but never wanted to leave his grandfather's home. The report noted respondent's previous failures to comply with tasks, his inconsistent visitation, and his criminal history, including a recent history of threats of domestic violence. The report found J.A. was emotionally attached to his grandfather, had developed friendships in the area, and was involved in extracurricular activities. His sense of security and familiarity was with his grandfather. The report recommended adoption. A caseworker testified at the hearing consistent with the report. J.A.'s grandfather similarly testified. He also stated he planned to continue contact with respondent's side of the family even if he adopted J.A.

¶ 16        Respondent, who was currently in custody, testified he tried to see J.A. every other weekend at respondent's grandmother's house. He said he purchased gifts for J.A. and provided testimony about a bond between them. He admitted J.A. was safe in foster care and said he would continue to work with J.A.'s maternal grandfather. The appointed guardian *ad litem* testified and recommended adoption.

¶ 17        The trial court found it was in the best interest of the child to terminate respondent's parental rights. The court discussed at length the statutory factors to be considered. In particular, the court noted J.A. had spent about half his life in foster care with excellent care provided to him. He was bonded with his maternal grandfather, had developed relationships with others in the community, and had benefited from the stability his placement brought. The court expressed concern as to whether respondent could safely care for a child based on his criminal history and possession of weapons. Ultimately, the court concluded it was in J.A.'s best interest that respondent's parental rights be terminated.

¶ 18        Respondent filed a notice of appeal, and the trial court appointed counsel to represent respondent.

¶ 19                              II. ANALYSIS

¶ 20        Counsel moves to withdraw as appellate counsel for respondent. In his motion, counsel states he read the record and found no issues of arguable merit. Counsel further states he advised respondent of his opinion. Counsel supports his motion with a memorandum of law providing a statement of facts, a discussion of potential issues, and arguments why those issues lack arguable merit. This court advised respondent he had until August 17, 2022, to respond to the motion, and respondent did not do so.

¶ 21        As counsel notes, the best-interest determination is the only portion of the proceedings at issue before this court. We agree there are no viable issues relating to the initial finding of unfitness. Respondent stipulated to the allegation in the petition, and the State presented sufficient evidence to support its allegation.

¶ 22          Counsel submits there is nothing in the record from which one could reasonably argue the trial court's best-interest decision was against the manifest weight of the evidence. Our review of the record and the applicable law leads us to conclude counsel is correct.

¶ 23          Once a trial court finds a parent an "unfit person," it must consider whether terminating that person's parental rights serves the child's best interest. "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004); see also *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 80 (stating that once the trial court finds the parent unfit, "all considerations, including the parent's rights, yield to the best interests of the child").

¶ 24          When considering whether termination of parental rights serves a child's best interest, the trial court must consider several factors within "the context of the child's age and developmental needs." 705 ILCS 405/1-3(4.05) (West 2020). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072 (2006); see also 705 ILCS 405/1-3(4.05) (West 2020).

¶ 25        A trial court's finding that termination of parental rights is in a child's best interest will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 53. The court's decision will be found to be "against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 26        Based on a careful review of the record, we agree with counsel there is no issue of arguable merit with respect to the trial court's best interest finding. The evidence established it was in J.A.'s best interest to terminate respondent's parental rights. The record showed J.A. was six years old at the time of the best interest hearing. He had spent approximately one-half of his life in substitute care and was in need of permanency. Respondent had failed to demonstrate progress throughout the life of the case. Although not absent entirely, the record did not support respondent's assertion he was "incredibly involved" in J.A.'s life. The evidence further established the maternal grandfather provided for the physical safety, welfare, and needs of J.A. The court expressed concern respondent could not safely care for J.A. based on respondent's past and ongoing criminal and domestic violence history. Indeed, respondent was in custody at the time of the hearing. Moreover, the record showed J.A. was bonded to his grandfather, integrated into the household, and  provided with love and affection. J.A. told a caseworker he wished to stay with his grandfather and his grandfather had expressed a desire and willingness to adopt J.A.

¶ 27        Based on this evidence, the trial court found it was in the minor's best interest to terminate respondent's parental rights. Accordingly, we cannot find the court's decision to be "unreasonable, arbitrary, or not based on the evidence." *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 28                        III. CONCLUSION

¶ 29        After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel this appeal presents no issue of arguable merit. Accordingly, for the reasons stated, we grant the motion to withdraw as appellate counsel and affirm the trial court's judgment.

¶ 30        Affirmed.