NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230305-U

NOS. 4-23-0305, 4-23-0306, 4-23-0307 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 25, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.T., H.T., and E.T., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | Nos. 21JA29 |
| | ) | 21JA30 |
| v. | ) | 21JA31 |
| Paulla M., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Doherty and Knecht concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed
the trial court's judgment terminating respondent's parental rights, concluding no
meritorious issues could be raised on appeal.

¶ 2   In November 2022, the State filed a motion to terminate the parental rights of

respondent, Paulla M., as to her minor children, J.T., H.T., and E.T. The children's father, James

T., is not a party to this appeal. However, he appealed the termination of his parental rights in

appellate court case Nos. 4-23-0167, 4-23-0170, and 4-23-0171. We affirmed those cases on

appeal. *In re J.T.*, 2021 IL App (4th) 230169-U.

¶ 3   In February 2023, the trial court granted the State's petition and terminated

respondent's parental rights. Respondent appealed. Appellate counsel now moves to withdraw

pursuant to *Anders v. California*, 386 U.S. 738 (1967), on the basis he cannot raise any

potentially meritorious argument on appeal. Counsel's notice of filing indicates he sent a copy of his motion and brief to respondent by mail. This court also informed respondent she had leave to respond until June 26, 2023. Respondent has not done so. After reviewing the record and counsel's brief, we grant counsel's motion to withdraw and affirm the judgment of the court.

¶ 4                                    I. BACKGROUND

¶ 5            In May 2021, the State filed petitions for adjudication of wardship, alleging respondent and James neglected the children under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)) in that the children's environment was injurious to their welfare. The State alleged in part that, in May 2021, Paulla gave birth to E.T., and both she and E.T. tested positive for amphetamines. A child protection investigator and a child welfare specialist explained to respondent that, for the family to remain intact, she and James would need to submit to weekly drug screens. A few days after E.T.'s birth, Paulla was arrested on a warrant for felony theft and was in custody as of the date of the filing of the petition. The Illinois Department of Children and Family Services (DCFS) took protective custody of the children. DCFS found multiple suspicious bruises on H.T.'s back, shoulders, and arms. The petitions also included a section labeled "Prior History," stating two different dates in 2020 in which respondent was indicated for allegations of inadequately supervising J.T.

¶ 6            On October 4, 2021, respondent admitted to the allegations concerning E.T., her arrest, and to the prior history portion of the petitions. The trial court accepted respondent's admissions, found the minors were neglected or abused, and placed temporary custody and guardianship of the children with DCFS.

¶ 7            On January 7, 2022, following a dispositional hearing, the trial court found it was consistent with the health, welfare, and safety of the children and in their best interest to make

them wards of the court, granting their guardianship and custody to DCFS. In doing so, the court found, since October 4, 2021, there had not been any progress made towards a return home goal by either parent. The court further found both parents unfit and required them to submit a negative drug screen before visiting with the children.

¶ 8        On November 16, 2022, the State filed a petition for termination of parental rights, alleging, in part, respondent was unfit under section 1(D)(m)(i), (ii) of the Adoption Act (750 ILCS 50/1(D)(m)(i), (ii) (West 2022)) because she failed to make reasonable efforts to correct the conditions which were the basis for the removal of the children within any nine-month time period after they were adjudicated neglected under the Juvenile Court Act and failed to make reasonable progress towards the return of the children in any nine-month period after the end of the initial nine-month period after they were adjudicated neglected. The nine-month periods the State relied upon were from October 4, 2021, to July 10, 2022, and from July 11, 2022, to April 11, 2023.

¶ 9        On February 21, 2023, the trial court held a hearing on the State's petition. Bethany Greenwood, a child welfare specialist at Chaddock, the agency designated by DCFS to manage the case, testified she was the children's caseworker between October 2021 and March 2022. The case was transferred to another caseworker in March 2022 after Greenwood obtained an emergency order of protection against respondent because respondent had indicated she disliked Greenwood, had a combat knife at a visit, and disclosed to a parenting class that she drove by Greenwood's home and "flicked [her] off."

¶ 10        Greenwood testified she developed and evaluated a service plan in November 2021 that covered the months of May 2021 to November 2021. Under that plan, respondent was required to complete parenting classes, participate in visitation, substance abuse screenings, and

- 3 -

mental health treatment, cooperate with the agency, and maintain housing. Greenwood rated respondent unsatisfactory on most tasks. Respondent was incarcerated during part of the period covered by the plan, did not engage in services, failed drug screens, and was unable to attend all visits with the children. Respondent did not verify employment or have stable housing.

¶ 11 Kelsey Platt, a child welfare specialist supervisor at Chaddock, testified she approved a service plan developed by caseworker Brett Landwehr on April 21, 2022, to cover the time from November 2021 to April 2022. Platt rated respondent unsatisfactory on most tasks. Platt testified respondent's visitation was suspended by court order on April 21, 2022, due to use of derogatory language toward J.T. and bringing a large knife to one of the visits. Respondent was discharged from her parenting class and mental-health services due to nonattendance. She did not engage in substance-abuse services, failed drug screens, and reported she had been using methamphetamines. Because of respondent's behavior toward Greenwood, caseworkers did not attempt to visit respondent's home.

¶ 12 Mary Miller, a child welfare specialist at Chaddock, testified the case was transferred to her in October 2022 after Brett Landwehr left the agency. Miller remained the caseworker for the children up to the date of the hearing and created the service plan for the reporting period of April 2022 to November 2022. Miller rated respondent unsatisfactory on most tasks. Respondent did not engage in most services and had problems maintaining contact or keeping appointments. However, she did engage in some mental-health services. Respondent had moved into the basement of James's brother's home and admitted the basement was an inappropriate living situation. Miller stated respondent asked how the children were doing, but she did not send any cards, gifts, or letters to the children, she did not provide them with

Christmas gifts, and she had not made any sufficient progress to have her visits with the children reinstated.

¶ 13 The trial court found the State proved the allegations in the petition by clear and convincing evidence. The court found respondent unfit and noted respondent never sought to have visitation reinstated after it was suspended and failed to resolve the issues preventing her from reunification with the children during the time periods alleged in the petition.

¶ 14 The trial court next moved to the best interest portion of the hearing. Miller testified the children were placed with their maternal grandmother and stepgrandfather as foster parents. Miller favorably described the placement and testified the children were well cared for and bonded to their foster parents. One of the children had speech services and the foster parents took the child to appointments as needed. The foster parents met the children's needs and had signed permanency paperwork. The older children, especially J.T., were "extremely excited" about being adopted. Miller opined it was in the best interest of the children to be adopted by their foster parents.

¶ 15 The trial court found the State proved by a preponderance of the evidence it was in the best interest of the children to terminate parental rights and change the goals of their cases to adoption or guardianship.

¶ 16 This appeal followed.

¶ 17                                  II. ANALYSIS

¶ 18 Appellate counsel moves to withdraw on the basis no meritorious argument can be raised on appeal. Counsel has attached a memorandum in support of that motion. See *In re Austin C.*, 353 Ill. App. 3d 942, 945 (2004) (citing *In re S.M.*, 314 Ill. App. 3d 682, 685-86 (2000), and stating the proper *Anders* procedure in parental-termination cases). Specifically,

counsel asserts no argument can be made the trial court erred in finding respondent unfit or by terminating her parental rights.

¶ 19                    A. Finding of Parental Unfitness

¶ 20        Counsel first asserts it would be frivolous to argue the trial court erred in finding respondent unfit.

¶ 21        Involuntary termination of parental rights under the Juvenile Court Act is a two-step process. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 67. The State must first prove by clear and convincing evidence the parent is unfit under any single ground listed in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *J.H.*, 2020 IL App (4th) 200150, ¶ 67. If the State proves the parent meets one of the definitions of an "unfit person" in section 1(D), the trial court will hold a subsequent and separate hearing, in which the State must prove, by a preponderance of the evidence the proposed termination of parental rights would be in the child's best interest. *J.H.*, 2020 IL App (4th) 200150, ¶ 67.

¶ 22        Under section 1(D)(m) of the Adoption Act, a parent may be found unfit if she fails,

> "(i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent during any 9-month period following the adjudication of neglected or abused minor ***, or (ii) to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of [the] neglected or abused minor." 750 ILCS 50/1(D)(m)(i), (ii) (West 2020).

¶ 23        Whether a parent made reasonable efforts to correct the conditions which were the basis for removal of a child involves a subjective judgment of the effort reasonable for that

parent. *In re S.J.*, 233 Ill. App. 3d 88, 117, 278 (1992)). This court has defined "reasonable progress" as follows:

> " 'Reasonable progress' is an objective standard which exists when the [trial] court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the near future, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent will have fully complied with the directives previously given to the parent in order to regain custody of the child." (Emphases omitted.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991). See *In re Ta. T.*, 2021 IL App (4th) 200658, ¶¶ 51, 55-57.

¶ 24 We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *J.H.*, 2020 IL App (4th) 200150 ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the [trial] court's finding on the basis of the evidence in the record [citation]." (Internal quotation marks omitted.) *J.H.*, 2020 IL App (4th) 200150, ¶ 68.

¶ 25 Here, the record clearly shows respondent to failed to make reasonable efforts to correct the conditions that were the basis for removal of the children or make reasonable progress toward the return of the children to the parent during any nine-month period following the adjudication of the children as neglected or abused. Respondent did very little to engage in services, address her substance-abuse issues, or obtain suitable employment or housing. Her visitation was suspended, and she made no efforts to resume visitation. She made little to no

effort to comply with directives given to her, and nothing indicates the children could be returned to her anytime in the near future. Under those circumstances, we agree with counsel that the trial court's determination respondent was unfit was not against the manifest weight of the evidence. Further, we find not only was the court's finding of unfitness not against the manifest weight of the evidence, but we find no reasonable or meritorious argument could be made to the contrary.

¶ 26                                B. Best Interest Determination

¶ 27          Counsel next asserts it would be frivolous to argue the trial court erred in finding respondent unfit.

¶ 28          "Following a finding of unfitness ***, the focus shifts to the child. The issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated." (Emphases in original.) *In re D.T.*, 212 Ill. 2d 347, 364 (2004). Thus, at the best-interest stage of termination proceedings, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best interest. See *In re Jay H.*, 395 Ill. App. 3d 1063, 1071 (2009). The Juvenile Court Act lists several factors the trial court should consider when making a best-interest determination. 705 ILCS 405/1-3(4.05) (West 2022). These factors, considered in the context of the child's age and developmental needs, include the following:

>          "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement

- 8 -

alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *Jay H.*, 395 Ill. App. 3d at 1071 (citing 705 ILCS 405/1-3(4.05) (West 2008)).

¶ 29    We will not disturb the trial court's best-interest determination unless it was against the manifest weight of the evidence, which occurs only when "the facts clearly demonstrate that the court should have reached the opposite result." *Jay H.*, 395 Ill. App. 3d at 1071.

¶ 30    We agree with counsel there is no issue of arguable merit with respect to the trial court's best interest finding. The evidence established it was in the children's best interest to terminate respondent's parental rights. The record showed the children were well cared for in their foster placement and in need of permanency. The children were bonded to their foster parents. The foster parents met the children's needs and had signed permanency paperwork. The older children, especially J.T., were "extremely excited" about being adopted. Nothing negative about the placement appears in the record. Based on this evidence, the court reasonably found it was in the minors' best interest to terminate respondent's parental rights. Accordingly, we cannot find the court's decision to be "unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 31                    III. CONCLUSION

¶ 32    After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel this appeal presents no issue of arguable merit. Accordingly, for the

reasons stated, we grant the motion to withdraw as appellate counsel and affirm the trial court's judgment.

¶ 33          Affirmed.