2023 IL App (2d) 230132-U
Nos. 2-23-0132, 2-23-0133, 2-23-0134, & 2-23-0135 cons.
Order filed November 2, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* B.A., I.I., E.I., and M.I., Minors | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | Nos. 21-JA-167 |
| | ) | 21-JA-168 |
| | ) | 21-JA-169 |
| | ) | 21-JA-170 |
| | ) | |
| (The People of the State of Illinois, Petitioner- | ) | Honorable |
| Appellee, v. Chevondria R., Respondent- | ) | Kathryn D. Karayannis, |
| Appellant). | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*: We grant appellate counsel's motion to withdraw and affirm the trial court's judgment terminating respondent's parental rights, concluding there exist no issues of arguable merit to be raised on appeal.

¶ 2    Respondent, Chevondria R., appeals from the trial court's order finding her unfit to parent her children, B.A. (born July 16, 2007), M.I. (born August 24, 2013), I.I. (born November 27, 2017), and E.I. (born August 16, 2019), and, and terminating her parental rights.[1]  Her appellate

_____

[1]The parental rights of Jonathan A., B.A.'s father, and Israel I., I.I.'s, E.I.'s, and M.I.'s

counsel has moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967), stating that she has read the record and concluded there exist no issues of arguable merit to be raised on appeal. See *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000) (holding *Anders* applies to cases involving termination of parental rights). Counsel has supported her motion with a memorandum of law providing a statement of facts, potential issues, and argument as to why those issues lack arguable merit. See *In re Alexa J.*, 345 Ill. App. 3d 985, 988 (2003) (further holding that "counsel must identify at least one potentially justiciable issue in a motion to withdraw under *Anders*."). Counsel served respondent with a copy of the motion and memorandum. We advised respondent that she had 30 days to respond to counsel's motion. That time has passed, and no response was filed. We conclude that this appeal lacks arguable merit based on the reasons set forth in counsel's memorandum. Therefore, we grant counsel's motion and affirm the trial court's judgment.

¶ 3    We note that this appeal was accelerated under Illinois Supreme Court Rule 311(a) (eff. July 1, 2018). Pursuant to that rule, the appellate court must, except for good cause shown, issue its decision in an accelerated case within 150 days of the filing of the notice of appeal. Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). Here, respondent filed her notice of appeal on April 21, 2023. Respondent's first counsel filed his motion to withdraw on June 20, 2023, and respondent was given 30 days to respond; no response was filed. On June 26, 2023, this court denied counsel's motion, without prejudice, as counsel did not follow the procedure laid out in *Alexa J.* Counsel filed a second *Anders* motion, and this court, on its own motion on August 16, 2023, struck the motion, as counsel once again did not comply with the procedure laid out in *Alexa J.* We also discharged counsel and remanded the cause for the limited purpose of the appointment of new

---

father, were also terminated. They are not parties to this appeal.

counsel. The trial court appointed new counsel, and, on October 2, 2023, counsel moved to withdraw under *Anders*. Due to these circumstances, we find good cause for this decision to be issued after the time frame mandated by Rule 311(a).

¶ 4                                    I. BACKGROUND

¶ 5      At an October 28, 2021, shelter care hearing, respondent stipulated to the factual basis the State presented to support its neglect petition. Specifically, that respondent had a history of substance abuse, I.I. was born substance exposed to cocaine, and respondent tested positive for cocaine in October 2021. Further, B.A., age 14, was found with the other children and respondent's niece in the family home without respondent; she was still alone with them the following day and told investigators that respondent told her to lie and say that her aunt was with her. DCFS was granted custody and guardianship of the minors.

¶ 6      On January 27, 2022, respondent stipulated to the State's evidence at the adjudicatory hearing. At a February 10 hearing at which respondent was present, Carpentersville police officer Juan Cisneros testified that, on March 26, 2021, he met with respondent at the police station. Cisneros observed on respondent scratches on her arms, red marks around her neck, and a blood spot on her left eye. He photographed her injuries, and the photographs were admitted at the hearing. Respondent told Cisneros that Israel I. inflicted the injuries, and he was subsequently arrested. Brianna Giovanetti, a DCFS investigator, testified that she was assigned to the case in September 2021, when the agency learned that there was a physical altercation in respondent's home that involved the police and there were reports concerning substance use by respondent. Respondent admitted to using ecstasy, and a safety plan was put in place until she could submit to a drug test. There was also an incident concerning improper supervision. After the "drug drop,"

the children were taken into protective custody. (Israel I. did not live with respondent at this time.) The trial court adjudicated the minors neglected.

¶ 7       On March 11, 2022, a dispositional hearing was held. Respondent was not present. The minors were made wards of the court. The trial court found that respondent was unfit and unable to care for, protect, educate, train, discipline, or supervise the minors and that placement with her would be contrary to their safety and health and not in their best interests. It noted that respondent needed to participate in services, assessments, random drug drops, domestic violence counseling, parenting education and coaching, have appropriate and regular visits, and participate in family therapy when recommended. The court also noted that respondent needed to have stable housing and income.

¶ 8       On April 10, 2022, respondent witnessed the killing of two people and was under police protection until April 18, 2022. A music video had been filmed in her Elgin apartment, and the rapper in the video was one of the men who was killed.

¶ 9       Respondent did not appear at a June 3, 2022, status hearing. The court noted that respondent had not been participating in services, including intensive outpatient and group therapy. Respondent underwent a substance abuse evaluation, wherein she admitted to using THC and cocaine daily. Lindsay Burcham, a Lutheran Social Services caseworker, informed the court that she had not had much contact with respondent. Respondent informed Burcham that she was not going to be able to complete a drug drop, and she failed to confirm a parent-child visit, which resulted in cancellation of the visit.

¶ 10       The first permanency hearing occurred on October 28, 2022. Respondent was present. Burcham reported that Ecker Center informed her that respondent did not appear on October 24 for an assessment for possible inpatient services and that this was the third time this had occurred

(and they would not, as a result, be able to provide her services for three months). As to B.A., the State noted that her father had never been involved in this case and that respondent had not engaged in services. The State argued, and the court appointed special advocate (CASA) concurred, that respondent had not been making reasonable efforts or progress and that termination of parental rights was an appropriate goal. Respondent noted that she had an intake that day with Lutheran Social Services in Elgin for drug and alcohol services. The trial court found that the goal for B.A. was substitute care pending termination of parental rights. It noted that respondent offered no proof that she had followed through with substance abuse services and that it was "too little too late[.]" The court further noted respondent's "complete failure to attend" her services (*i.e.*, individual therapy, domestic violence, and parenting classes) and many (*i.e.*, 11) of her drug drops; the drops she did complete (*i.e.*, 4), the court noted, were positive for cocaine and THC (most recently on October 7, 2022). Respondent was not visiting "appropriately or regularly"; specifically, respondent had inappropriate conversations with B.A., which caused her emotional distress. The court also referenced a Snapchat post that showed respondent in Arizona and Colorado, drinking with her boyfriend at a marijuana dispensary, which did not reflect responsibility for the children. The trial court noted that the agency report stated that respondent had made a statement to CASA that her agency worker stressed her out by making her choose between attending drug drops and meeting with her dealer. The court found that respondent had not made reasonable efforts or progress. Finally, due to interruptions by respondent during the hearing, which was conducted via Zoom, the court ordered that she appear in person at future hearings.

¶ 11    As to I.I., E.I., and M.I., Burcham again related how respondent did not appear for an assessment at Ecker Center. The trial court set the goal to substitute care pending termination of

2023 IL App (2d) 230132-U

parental rights. The court found that the children were being cared for by relatives in safe places. Respondent, the court determined, had refused to complete services or was unable to complete her services at Ecker Center. Respondent had also failed to offer proof of having gone to Lutheran Services. Even if she had offered proof, the court found, it "would be too little too late because she has failed to do [it] three times at Ecker Center, when she could have done or started her services there." During one of her drug screens, respondent reported she used marijuana daily and cocaine at times. She failed to provide 11 drug drops between May 27, 2022, and October 7, 2022, and she tested positive four times, most recently on October 7, 2022. She was referred to Mutual Ground for domestic violence services, but had not participated in such services. The trial court noted that she was referred to Centro de Informacion for parenting services but had not participated in parenting services. The court also stated that DCFS had noted that there may have been a warrant out for respondent's arrest in Wisconsin. The court referenced respondent's irregular visitation; some visits were cancelled due to the children being sick, but respondent also failed to confirm visits and they were canceled as a result. She had also been late to visits. The court also referenced the Snapchat post. Thus, as to I.I., E.I., and M.I., the court found that respondent had not made reasonable efforts or progress.

¶ 12    The court determined that DCFS had made reasonable efforts and that it was necessary and in the minors' best interests that they continue to be placed outside the home.

¶ 13    On December 21, 2022, the State petitioned to terminate respondent's parental rights, alleging that respondent was unfit in that she had failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)); she had failed to protect the minors from conditions within their environment injurious to their welfare (720 ILCS 50/1(D)(g) (West 2022)); she had failed to make reasonable efforts to correct the

- 6 -

conditions that were the basis for the removal of the minors from her during the nine-month period between February 11, 2022, and November 11, 2022, after an adjudication of neglected, abused, or dependent minors (750 ILCS 50/1(D)(m)(i) (West 2022)); and she failed to make reasonable progress toward the return of the minors to her during the nine-month period from February 11, 2022, through November 1, 2022, after an adjudication of neglected minor, abused minor, or dependent minor (750 ILCS 50/1(D)(m)(ii) (West 2022)).

¶ 14                                  A. Fitness Hearing

¶ 15     At the March 9, 2023, fitness hearing, Elgin police officer Gallagher[2] testified that, on July 12, 2022, he was dispatched to 302 North Crystal Avenue.  A fight had broken out on the street outside the address.  Once there, he observed people scuffling and saw respondent lean over an officer and spit on another female at the scene.  Respondent was subsequently charged with domestic battery, because the other woman was a member of her household at the time.

¶ 16     Burcham, the Lutheran Social Services caseworker, testified that the minors came into care because they were left home alone for substantial amounts of time.  Specifically, B.A., age 14, was left in charge of the younger children and respondent's nine-year-old niece (who was living in the home at the time).  Respondent used cocaine in the presence of the children and remained in contact with the father of the three younger children, who had a history of domestic violence against her.

¶ 17     Burcham was first assigned to this case in December 2021.  Respondent participated in an integrated assessment, and the agency created a client service plan.  Respondent was recommended for substance abuse services, parent coaching, parent education, individual therapy, and domestic

---

[2]Officer Gallagher's first name does not appear in the record.

violence services. She was also recommended to submit to random drug drops to show she was maintaining sobriety.

¶ 18    As to domestic violence services, respondent was referred in March 2022 to both Mutual Ground and Community Crisis Center, because there were wait lists for domestic violence services. She had an intake appointment on March 10 but there was never any follow-up. Thus, as of March 2022, respondent had not completed any domestic violence services. As to substance abuse services, Burcham completed a screening and then referred respondent to Ecker Center. In March, respondent reached out to Ecker for an assessment but did not go for the assessment. In April, she went in for an assessment but never contacted Ecker again. In May, respondent contacted Lutheran Social Services on her own, asking for an assessment, and was recommended residential treatment for substance abuse. Respondent refused to undergo an assessment, stating she did not need it. Respondent then contacted Ecker again in August 2022, and she completed an assessment and one class of intensive outpatient services. However, she was unsuccessfully discharged due to non-attendance for missing the next two classes. She subsequently contacted Ecker again, but Ecker would not take her for another three months due to missing so many assessments.

¶ 19    Addressing parenting services, Burcham testified that respondent was referred to Centro de Informacion in March 2022. Respondent indicated that she had contacted the provider, but Burcham was not able to confirm this.

¶ 20    In the summer of 2022, respondent missed drug drops. She did not notify Burcham that she had to attend an out-of-state funeral. In August 2022, Burcham became aware of videos of respondent traveling in Arizona or Colorado.

¶ 21    Respondent told Burcham during a substance abuse screening that she frequently used marijuana and last used cocaine a few days earlier. (She did not provide a medical marijuana card.) At the end of December 2022 (*i.e.*, after the relevant nine-month period), respondent completed a substance abuse inpatient program at Haymarket. Upon discharge, Haymarket recommended intensive outpatient services. Burcham was unaware if respondent had completed those services, and she did not provide Burcham with any proof of attendance at any Alcoholics Anonymous (AA) or Narcotics Anonymous (NA) program. Nor had she mentioned whether she had obtained a sponsor.

¶ 22    Burcham referred respondent for 30 drug drops, and respondent completed 9. None of the nine drops were negative, and respondent tested positive for THC in all drops, positive for alcohol in one drop, and positive for cocaine in five drops. These occurred before the goal change in October 2022.

¶ 23    In 2023, Burcham requested two more drug drops, one at the beginning of January and one at the end of January. On January 27, 2022, Burcham requested a drop, but respondent stated she was out of town. On January 31, Burcham requested another drop, and respondent completed it and tested positive for THC. Upon being informed of the results, respondent stated, "okay."

¶ 24    Addressing visitation, respondent was not consistent, making 10 out of 22 supervised visits. Respondent inquired about her children at times. There were times when she brought gifts to the visits; she also brought money, food, and games. After the goal change, the visits went to once per month, and respondent missed the January 2023 visit.

¶ 25    On cross-examination by respondent's counsel, Burcham testified that respondent was hospitalized for three weeks in May 2022. She missed several drug drops after she said she was released from the hospital; two because she was ill. Between October 2022 and January 2023,

Burcham did not request any drug drops. There were times when respondent inquired about her children, such as two weeks in a row, but, other times, she would not inquire for over one month. In 2022, she inquired about 10 times. Burcham did not have any safety concerns at the visitations.

¶ 26    On re-direct examination, Burcham testified that, during a visit, respondent told her daughter B.A. not to dress like a "faggot," which upset B.A. At the time of the hearing, B.A. did not wish to have visits with respondent; she is questioning her sexuality and suffers from depression. Respondent cursed in front of the minors and joked in a mean manner that, at times, upset M.I.

¶ 27    During respondent's case, her counsel presented three exhibits that were admitted into evidence: (1) a letter from Haymarket Center, dated December 13, 2022, noting that respondent was admitted on November 22, 2022, and successfully discharged on December 12, 2022, and recommending weekly AA, NA, or CA meetings; (2) a Lutheran Services letter, dated March 3, 2023, from a student intern; and (3) a treatment recommendation document from Ecker Center, dated March 6, 2023, recommending four weekly group sessions.

¶ 28    In closing, respondent's counsel argued that respondent is an addict but had recently changed her life to try and better herself. Counsel noted that respondent went to Haymarket Center and was admitted there on November 22, 2022, although conceding this was 10 days after the nine-month period cited in the State's termination petition. Respondent was admitted into the Mather Hall program, an inpatient residential facility where she attended group treatment and set treatment goals. She also received one-on-one treatment for mental health relapse prevention and group sessions for post-acute withdrawal symptoms, self-awareness, anger management classes, etc. Respondent had 25 hours of group therapy while in the treatment and individual counseling sessions. After she was discharged in December 2022, counsel noted, respondent contacted

Lutheran Services on March 3, 2023. A letter from a DePaul University student, Shavante Dickey, asserted that she is a master's level student interning under a licensed social worker. Since 2022, she had been working with respondent at Lutheran Services. Respondent was to begin behavioral health services at Ecker Center on March 6, 2023. She underwent an assessment and was to begin treatment on March 13, 2023, at the RENZ Center for Women's Recovery. Counsel argued that respondent had acknowledged her prior unsuccessful attempts at sobriety and that she knew it was imperative that she make this change.

¶ 29 The trial court found respondent unfit and granted the State's petition to terminate respondent's parental rights. The court found Gallagher and Burcham credible and noted that respondent did not do what she needed to do in the relevant time period (*i.e.*, February 11, 2022, to November 11, 2022). It noted that, during the relevant period, respondent did not engage in services or assessments, including individual therapy. Respondent did nothing more than an intake evaluation for domestic violence services, attended Haymarket inpatient treatment in November 2022 (*i.e.*, after the end of the nine-month period), but missed a drop after that. The court referenced that respondent attended less than half of her drug drops and tested positive at the completed ones. Addressing the Haymarket Center report, the court noted that there was no proof that respondent had engaged with AA or NA. It also noted that respondent missed a drug drop in January 2023. The court further found that respondent showed some concern for her children, but not reasonable concern. She did not visit consistently, attending less than half her scheduled visits. She was also on a video out of state with someone who was using drugs in June 2022, a date close to a court date she failed to attend.

¶ 30                                    B. Best Interests Hearing

¶ 31    At the April 5, 2023, best interests hearing, Burcham testified that B.A. has been placed in a traditional foster home since December 23, 2022. She lives with foster parents and another foster youth who is six years old. The home is very caring, and B.A. trusts her foster parents and knows she can go to them for help. B.A. is doing well in school and is passing all her classes. She does not, however, always take her medication, and she recently got into a fight at school. A meeting had been arranged with Burcham, therapists, the foster parents, and Burcham's supervisor to address this.

¶ 32    Burcham further testified that I.I., E.I., and M.I. are currently placed with a paternal aunt (E.I. since December 2021, and I.I. and M.I. since January 2023). The paternal aunt and uncle live in the home, as do their adult daughter and three younger boys. The minors are very comfortable in the home and get along with their cousins. There are no safety concerns, and it is a pre-adoptive home. They have contact with B.A. M.I. is receiving services.

¶ 33    On cross-examination by respondent's counsel, Burcham testified that there are five bedrooms in the aunt and uncle's home, with three adults and six children living there, though the adult daughter is moving out. The family has six dogs—pit bulls. Burcham has no concerns about the dogs and has witnessed them interacting with the children. M.I. sleeps with one of the dogs. The home is reported to be about nine hundred square feet, but Burcham was uncertain if it is actually that size.

¶ 34    Respondent did not testify. In closing, respondent's counsel asked the court to consider the lengths respondent had gone to better herself. Counsel also raised a concern about the safety and welfare of the three younger children, arguing the aunt and uncle's home was very small.

¶ 35    The trial court found that it was in the minors' best interests that respondent's parental rights be terminated. It determined that the children were doing well in their placements.

Addressing respondent's exhibits, the court noted that her attendance at Haymarket occurred after the goal was changed, it was a 28-to-90-day inpatient program, and respondent attended for only 21 days. Further, the aftercare portion consisted of intensive outpatient services, and respondent offered no proof that she actually engaged in such services. The individual therapy that was ordered, the court noted, also was not substantiated. Addressing the children's safety, the court noted that E.I. had been in the small home since December 2021 with the dogs and had been safe. Adding his sisters, the court found was a benefit to E.I. because the siblings were together and Burcham had no safety concerns regarding the dogs. M.I. likes to sleep with one of the dogs. M.I. wants to stay in the placement if she cannot return home. The trial court noted that the children were safe in their placement and doing well there. B.A. had noted that this was the first time she had a Christmas tree.

¶ 36   Respondent appealed. The trial court appointed counsel to represent respondent on appeal. As noted, appellate counsel has filed a motion to withdraw, in accordance with *Anders*.

¶ 37                                II. ANALYSIS

¶ 38   In her motion to withdraw, appellate counsel identifies the following potential challenges to the court's unfitness and best interests findings, including as to the court's October 2022 goal change from return home to termination of parental rights and as to the court's failure to intervene in the agency's placement decision.

¶ 39   The Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2022)) sets forth a two-stage process for the involuntary termination of parental rights. *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. Initially, the State has the burden of proving by clear and convincing evidence that the parent is unfit under any single ground set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). See 705 ILCS 405/2-29(2), (4) (West 2022); *In re J.L.*, 236 Ill. 2d 329, 337

(2010). If the trial court finds the parent unfit, the State must then show by a preponderance of the evidence that termination of parental rights is in the child's best interests. See 705 ILCS 405/2-29(2) (West 2022); *In re D.T.*, 212 Ill. 2d 347, 367 (2004). On appeal, this court will not disturb a trial court's finding as to parental unfitness or a child's best interests unless it is against the manifest weight of the evidence. *In re N.B.*, 2019 IL App (2d) 180797, ¶¶ 30, 43. A decision is against the manifest weight of the evidence where the decision is unreasonable. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 40    Furthermore, it is well settled that, "when parental rights are terminated based upon clear and convincing evidence of a single ground of unfitness, the reviewing court need not consider additional grounds for unfitness cited by the trial court." *In re Tiffany M.*, 353 Ill. App. 3d 883, 891 (2004). Hence, if we affirm the trial court's decision on one ground, we need not consider the court's decision on the other grounds. After careful review, we agree that there would be no arguable merit to a challenge to the court's finding of unfitness because, at a minimum, the court's finding that respondent failed to make reasonable progress toward reunification during the designated nine-month period is not contrary to the manifest weight of the evidence.

¶ 41    The question of reasonable progress is an objective one, which requires the trial court to consider whether a parent's actions during a given nine-month period would support the court's decision to return the child home soon. *In re Phoenix F.*, 2016 IL App (2d) 150431, ¶ 7. The court will consider the parent's compliance with the service plans and the court's directives. *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001). For there to be reasonable progress, there must be, at a minimum, some measurable or demonstrable movement toward the goal of reunification. *In re J.O.*, 2021 IL App (3d) 210248, ¶ 57.

¶ 42    We agree with counsel that the potential issues she identifies lack arguable merit.  The State alleged that respondent failed to make reasonable efforts or progress during the nine-month period from February 11, 2022, to November 11, 2022.  Here, at a minimum, the record amply supports the trial court's determination that respondent failed to make reasonable efforts during this time.  She made no efforts (other than occasional visits) to comply with her service plan and correct the conditions that brought the minors into custody.

¶ 43    The minors were taken into custody in October 2021, after I.I. was born cocaine exposed and B.A., age 14, was found with the other children and respondent's niece in the home without respondent.  She was alone with them the following day and told investigators that respondent told her to lie and say her aunt was with her.  There was also a domestic violence incident in the home in March 2021.  Various services were recommended for respondent, but she did not participate in services, including individual therapy, domestic violence counseling, and parenting classes.  Although she did undergo a substance abuse evaluation (wherein she admitted to using THC and cocaine daily), she failed three times to appear (at Ecker Center) for an assessment for inpatient services as of October 28, 2022, and was unsuccessfully discharged.  Also, respondent was referred for 30 drug drops and completed only 9 of them.  None of the nine were negative; respondent tested positive for THC in all drops, positive for alcohol in one drop, and positive for cocaine in five drops.  (These occurred before the goal change.)  As to visitations, she did not visit regularly, attending 10 out of 22 supervised visits, and made comments to B.A. that caused her emotional distress.  There was also a video of respondent with someone out of state who are using drugs in June 2022, a date close to a missed court date.

¶ 44    Respondent did not begin to address her substance abuse issues until after the nine-month period at issue.  And even those efforts, as the court found, were insufficient. At the end of

December 2022, respondent completed a substance abuse inpatient program at Haymarket, but provided no proof of the recommended intensive outpatient services such as AA or NA. Also, respondent tested positive for THC in late January 2023. Respondent's trial counsel argued that respondent had recently changed her life to try to better herself, but conceded that respondent went to Haymarket 10 days after the nine-month period at issue and attended for only 21 days of the 28-to-90-day program and, as the court noted, did not offer proof of participation in AA or NA.

¶ 45    As to the best interests finding, the trial court addressed the minors' safety, noting that E.I. had been in the paternal aunt's home since December 2021 with the six pit bulls and had been safe and that M.I. liked to sleep with one of the dogs. The court also again referenced Haymarket, noting that respondent attended only after the goal had been changed, attended for only 21 days of the 28-to-90-day program, and she offered no proof of engagement in intensive outpatient services.

¶ 46    Based on the foregoing, we cannot conclude that the trial court's fitness finding was against the manifest weight of the evidence. Thus, we agree with counsel that no viable argument challenging the court's fitness finding could be raised. We also agree that no viable argument can be raised concerning the court's best interests determination.

¶ 47                         III. CONCLUSION

¶ 48    After examining the record, the motion to withdraw, and the supporting memorandum of law, we agree with appellate counsel that respondent's appeal presents no issues of arguable merit. Thus, we grant the motion to withdraw and affirm the judgment of the circuit court of Kane County.

¶ 49    Motion granted; affirmed.