NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250118-U

NO. 4-25-0118

IN THE APPELLATE COURT

FILED
June 11, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* A.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Knox County |
| Petitioner-Appellee, | ) | No. 22JA52 |
| v. | ) | |
| Patricia H., | ) | Honorable |
| Respondent-Appellant). | ) | Curtis S. Lane, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding the trial court did not err in finding termination of respondent's parental rights was in the minor's best interest.

¶ 2    On January 21, 2025, the trial court entered an order terminating the parental rights of respondent, Patricia H., to her minor child, A.H. (born July 2019). Respondent appeals, arguing the court erred in finding termination of her parental rights was in the minor's best interest. We affirm.

¶ 3                              I. BACKGROUND

¶ 4                              A. Case Opening

¶ 5    On September 1, 2022, the State filed a petition for adjudication of wardship. The petition alleged A.H. was (1) abused (count I) (705 ILCS 405/2-3(2)(i) (West 2022)) and (2) neglected (count II) (705 ILCS 405/2-3(1)(b) (West 2022)) because she was in an environment

injurious to her welfare in that she had "significant bruising and scratches to her face," multiple abrasions, and other bruising and scarring on her body for which respondent did not seek medical treatment. That same day, the trial court placed temporary custody and guardianship with the Illinois Department of Children and Family Services (DCFS).

¶ 6    On April 25, 2023, the trial court adjudicated A.H. neglected pursuant to respondent's stipulation to count II. Following the dispositional hearing, the trial court made A.H. a ward of the court and continued her custody and guardianship with DCFS.

¶ 7                                B. Termination Petition

¶ 8    On April 15, 2024, the State filed a petition to terminate respondent's parental rights. The petition alleged respondent was an unfit parent in that she (1) failed to make reasonable efforts to correct the conditions that caused the minor to be removed during a nine-month period after the minor was adjudicated neglected (750 ILCS 50/1(D)(m)(i) (West 2022)), (2) failed to make reasonable progress toward the return of the minor to her care during a nine-month period after the minor was adjudicated neglected (750 ILCS 50/1(D)(m)(ii) (West 2022)), and (3) failed to maintain a reasonable degree of interest, concern, or responsibility for the minor's welfare (750 ILCS 50/1(D)(b) (West 2022)). The relevant time period alleged by the State was June 5, 2023, to March 5, 2024. The State eventually filed a second amended petition to terminate respondent's parental rights on May 21, 2024, alleging the same allegations against respondent and adding an allegation of unfitness against all known and unknown fathers of A.H. (The record shows no one claiming paternity of A.H. appeared and the trial court found the unknown father of A.H. to be in default.)

¶ 9                                C. Fitness Hearing

¶ 10    The trial court commenced the fitness hearing on July 23, 2024. Respondent did

not appear. Tara Wilder testified she was A.H.'s caseworker during the relevant time period. According to Wilder, respondent was required to (1) participate in domestic violence classes, (2) complete a mental health evaluation, (3) complete a substance abuse evaluation, (4) participate in parenting education classes, (5) participate in visitation, (6) obtain stable housing and income, and (7) participate in random drug drops. During the relevant time period, respondent failed to complete a substance abuse evaluation. Wilder noted respondent "did schedule one with Bridgeway, but she did not show for it." Further, respondent did not comply with any drug drops. Wilder described her contact with respondent as intermittent and inconsistent. While respondent did complete a mental health assessment, she did not engage in the recommended counseling services and was unsuccessfully discharged due to lack of participation. Wilder indicated she never received proof of income from respondent, despite respondent's assertion that she was working at Midstate Manufacturing. Respondent did obtain housing through the Knox County Housing Authority. At the time of the fitness hearing, respondent had not participated in parenting classes, nor had she participated in domestic violence classes. Regarding visitation, Wilder stated respondent's visitation was scheduled during A.H.'s lunch hour, "so [A.H.] missed lunch at school and [respondent] was not bringing her food." As a result, Wilder testified, "[T]hey would have to end the visit early because [A.H.] *** was hungry and didn't want to stay so it got to the point where the school would just hold a lunch for her just in case that happened." Respondent's visits were reduced to one hour a week because she was not providing lunch for A.H. Wilder observed respondent was "nurturing during the visit time and was appropriate but she would not bring proper supplies."

¶ 11         After arguments from the parties, the trial court found the State had proven respondent unfit as alleged in all three counts of the second amended petition to terminate parental

rights. Specifically, the court noted, "[T]here's been a complete lack of completion of any services."

¶ 12                                    D. Best Interest Hearing

¶ 13        The trial court conducted a best interest hearing on January 21, 2025. The best interest report filed on July 29, 2024, noted A.H. had been in care for 692 days. According to the report, A.H. was bonded with her foster family and her physical, mental, and emotional needs were being met by her foster parents.

¶ 14        Wilder testified A.H. had been in her current foster placement since August 2022, and she was currently involved in T-ball and swimming. Wilder noted A.H. was well integrated into her foster family and, they provided [A.H.] "with everything she needs and she's nurtured." With regard to the foster parents, Wilder indicated A.H. referred to them as "Mom and dad." Wilder testified A.H. sought out her foster mother for comfort and care, noting the foster mother was A.H.'s "comfort zone." Regarding respondent, Wilder stated she was still participating in visits with A.H. Further, at the time of the best interest hearing, respondent was participating in domestic violence classes, mental health services, and substance abuse services.

¶ 15        Upon further inquiry from the trial court, Wilder explained respondent's visits with A.H. were reduced from once a week to once a month because A.H.'s "therapist recommended it because [A.H.] had a lot of behaviors revolved around visitation." Wilder described these behaviors as "[o]utbursts and just not adjusting well to coming back home," and she stated that it "was just hard to regulate back into [A.H.'s] routine after visitation."

¶ 16        Respondent testified she had been employed at Hallcon for three months. Respondent testified she had recently completed parenting classes and she was "getting successfully discharged from substance abuse counseling tomorrow." Moreover, she was currently

participating in mental health counseling and domestic violence classes. When asked about her relationship with A.H., respondent stated they "have always been really close. *** She feels comfortable with me to talk to me. *** We just have a really strong bond."

¶ 17　　　　Following arguments, the trial court found termination of respondent's parental rights was in A.H.'s best interest. The court began by noting A.H. had spent "nearly the majority of her life" in her foster placement. The court continued, "I don't dispute that [A.H.] has some type of bond with her mother but, obviously, there have been behaviors surrounding around those visits." The court concluded, after considering the statutory factors, A.H.'s foster parents were "meeting her needs" and it was in A.H.'s best interest that respondent's parental rights be terminated.

¶ 18　　　　This appeal followed.

¶ 19　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 20　　　　At the outset, we note respondent does not challenge the unfitness findings. Respondent's sole contention on appeal is that the trial court's best interest finding was against the manifest weight of the evidence.

¶ 21　　　　When a trial court finds a parent to be unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The State must prove by a preponderance of the evidence that termination of parental rights is in the minor's best interest. *D.T.*, 212 Ill. 2d at 366. In making the best interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)). These factors include:

"(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. "A reviewing court affords great deference to a trial court's best-interest finding because the trial court is in a superior position to view the witnesses and judge their credibility." *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. On review, "[w]e will not disturb a court's finding that termination is in the child[ ]'s best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 22        Here, the record supports the trial court's determination it was in A.H.'s best interest to terminate respondent's parental rights. A.H. had been living with her foster family since 2022, which was most of her life. The record indicated A.H.'s physical safety, stability, welfare, sense of attachment, and identity stemmed from her relationship with her foster parents. The admitted DCFS status report dated December 10, 2024, showed A.H. continued to thrive in her

current placement and the foster family was committed to A.H. The court appointed special advocate's report filed on January 13, 2025, was also admitted without objection. The court appointed special advocate noted the foster parents offered a stable and secure environment for A.H. and expressed their intention to achieve permanency through adoption.

¶ 23 The testimony of the DCFS caseworker showed A.H. had two biological siblings residing with her in the foster home. A.H. attended school regularly, participated in outside activities, and did not have any medical concerns. The caseworker spoke with A.H., and despite her young age, she expressed her desire to remain in the foster home, as she felt safe and liked living there. It was the opinion of the DCFS caseworker that the parental rights of respondent should be terminated. The basis for this opinion was respondent had not been consistent in completing her services and A.H. was acclimated and doing well in her current environment.

¶ 24 Respondent argues, "While it is true that A.H. had been placed in her foster home for over 2 years, that alone should not lead to the conclusion that the parental rights of [respondent] should be terminated." This argument mischaracterizes the trial court's findings. Indeed, here, the best interest report showed A.H. was thriving in her foster placement, was well bonded to her foster family, and her physical and emotional needs were being met. According to Wilder, A.H. referred to her foster parents as "[m]om and dad." The court recognized A.H. had "some type of bond with her mother." However, the court emphasized the need for permanency, highlighting the caseworker's testimony regarding the outbursts A.H. experienced after visits with respondent and the request by A.H. to cease visits, indicating her desire for a normal routine. Understandably, respondent wishes to remain in A.H.'s life; however, the focus of the best interest portion of termination proceedings is on the child's best interest. *D.T.*, 212 Ill. 2d at 364. "The issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs,

parental rights *should* be terminated." (Emphases in original.) *D.T.*, 212 Ill. 2d at 364. All told, the evidence in the record shows A.H. is in a good home, her needs are being met and she is taken care of by people who love her, all of which supports the court's decision that terminating respondent's parental rights served A.H.'s best interest, meaning the decision is neither unreasonable nor arbitrary. See *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16 (stating a trial court's decision is against the manifest weight of the evidence only when the opposite conclusion is apparent or when the decision is unreasonable, arbitrary, or not based on evidence). Thus, we conclude the trial court's best interest finding was not against the manifest weight of the evidence because we cannot say that the evidence adduced clearly calls for the opposite conclusion.

¶ 25                                III. CONCLUSION

¶ 26        For the reasons stated, we affirm the trial court's judgment.

¶ 27        Affirmed.