NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250318-U

NO. 4-25-0318

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 26, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Knox County |
| Petitioner-Appellee, | ) | No. 23JA58 |
| v. | ) | |
| Patricia H., | ) | Honorable |
| Respondent-Appellant). | ) | Curtis S. Lane, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, concluding the trial court did not err in finding termination of respondent's parental rights was in the minor's best interest.

¶ 2     On March 18, 2025, the trial court entered an order terminating the parental rights of respondent, Patricia H., to her minor child, K.H. (born September 2023). Respondent appeals, arguing the court erred in finding termination of her parental rights was in the minor's best interest. We affirm.

¶ 3                          I. BACKGROUND

¶ 4                          A. Case Opening

¶ 5     On September 25, 2023, the State filed a petition for adjudication of wardship. The petition alleged K.H. was a neglected minor pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)) because she was in an

environment injurious to her welfare in that respondent was previously found unfit in Knox County case No. 23-JA-58. Additionally, respondent tested positive for cannabis at the time of K.H.'s birth. That same day, the trial court placed temporary custody and guardianship of K.H. with the Illinois Department of Children and Family Services (DCFS).

¶ 6 On October 17, 2023, the trial court adjudicated K.H. neglected pursuant to respondent's stipulation. Following the November 7, 2023, dispositional hearing, the court made K.H. a ward of the court and continued her custody and guardianship with DCFS.

¶ 7 B. Termination Petition

¶ 8 On August 27, 2024, the State filed a petition to terminate respondent's parental rights. The petition alleged respondent was an unfit parent in that she (1) failed to make reasonable efforts to correct the conditions that caused the minor to be removed during a nine-month period after the minor was adjudicated neglected (750 ILCS 50/1(D)(m)(i) (West 2024)), (2) failed to make reasonable progress toward the return of the minor to her care during a nine-month period after the minor was adjudicated neglected (750 ILCS 50/1(D)(m)(ii) (West 2024)), and (3) failed to maintain a reasonable degree of interest, concern, or responsibility for the minor's welfare (750 ILCS 50/1(D)(b) (West 2024)). The relevant time period alleged by the State was October 23, 2023, to July 23, 2024. In its petition, the State included K.H.'s father, Dustin H., who is not a party to this appeal.

¶ 9 C. Fitness Hearing

¶ 10 The trial court commenced the fitness hearing on November 7, 2024. Respondent did not appear. The court subsequently found respondent to be in default.

¶ 11 D. Best Interest Hearing

¶ 12 The trial court initially conducted a best interest hearing on January 21, 2025.

Respondent failed to appear. After hearing evidence and argument from the parties, the court found it was in K.H.'s best interest that respondent's parental rights be terminated.

¶ 13 On February 4, 2025, respondent filed a motion to vacate the termination of her parental rights. In her motion, respondent indicated she was provided an incorrect start time for the best interest hearing by her caseworkers. The court subsequently granted respondent's motion, vacated the best interest order, and reset the matter for a hearing on March 18, 2025.

¶ 14 At the March best interest hearing, Deanna Benedict testified she had been K.H.'s caseworker since approximately July 2024. According to Benedict, K.H. was placed in her current foster home a few days after her birth and was well bonded with her foster family. Further, K.H.'s foster placement provided appropriate food, clothing, and shelter. When asked whether there had been "any problems with all of the children living there," Benedict responded, "There's been an issue that has arose in which the *** oldest boy in the home and *** [K.H.'s sibling] have some sexual encounters, but that's always addressed. And they both see the same counselor so the counselor addresses those issues with them as well." The State then asked Benedict whether she had any concerns with K.H. being in the foster home given those issues, and Benedict indicated she did not. With regard to respondent, Benedict indicated respondent had been consistent in her monthly visits with K.H. Benedict further noted respondent had completed parenting classes and substance abuse services and she was engaging in mental health services. However, Benedict recommended that respondent's parental rights be terminated, "[d]ue to the timeliness of the services that were asked to be completed."

¶ 15 On cross-examination, Benedict noted respondent's home was not appropriate for K.H. Citing cleanliness concerns, Benedict recalled a home visit where she observed "toys scattered everywhere, pots and pans that had been laying out with food in them, trash on the floor,

and dirt and other substances on the floor *** smeared in the tiles." Aside from environmental concerns, Benedict indicated there were concerns during supervised visits about respondent's parenting, "often times [respondent] would not hold [K.H.] if she was crying or try to console [K.H.]"

¶ 16    Respondent testified she was presently employed at Hallcon and had resided at her current residence for almost three years. Respondent testified she was currently participating in counseling. Respondent stated she felt bonded to K.H. and that "[K.H.] likes it when I hold her and play with her." When asked about whether respondent recalled "any incident where [K.H.] was crying or upset" and she did not console K.H., respondent stated that probably occurred when she was trying to tend to one of K.H.'s siblings.

¶ 17    Following argument, the trial court found termination of respondent's parental rights was in K.H.'s best interest. The court began by noting "the foster family has been the sole caretaker of this child from basically the release of the hospital." Accordingly, the court observed the "entirety of the child's identity, *** where the child would feel safety, would have any type of familial background would be with the foster [parents]." Therefore, the court reasoned, while respondent did have a bond with K.H., her sense of attachment clearly lay with K.H.'s current foster placement. Regarding the incident between K.H.'s sibling and another child in the foster home, the court stated, "[I]t is concerning if there is some type of sexualized behavior with another sibling and somebody else, but there was no evidence that [K.H.] has been exposed to that, or it also is not provided to me that *** steps have not been taken *** to address those behaviors." The court concluded, after considering the statutory factors, it was in K.H.'s best interest that respondent's parental rights be terminated.

¶ 18    This appeal followed.

¶ 19                                   II. ANALYSIS

¶ 20          At the outset, we note respondent does not challenge the trial court's unfitness findings. Respondent's sole contention on appeal is that the court's best-interest finding was against the manifest weight of the evidence.

¶ 21          When a trial court finds a parent to be unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The State must prove by a preponderance of the evidence that termination of parental rights is in the minor's best interest. *D.T.*, 212 Ill. 2d at 366. In making the best-interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these

factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. "A reviewing court affords great deference to a trial court's best-interest finding because the trial court is in a superior position to view the witnesses and judge their credibility." *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. On review, "[w]e will not disturb a court's finding that termination is in the child[ ]'s best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 22        Respondent argues, "K.H. had been placed in her foster home for over 1 year— since birth; however, that alone should not lead to the conclusion that the parental rights of [respondent] should be terminated." This argument mischaracterizes the trial court's findings. Indeed, here, K.H. had been living with her foster family since she was discharged from the hospital after her birth. As such, the "entirety" of K.H.'s identity, physical safety, stability, welfare, and sense of attachment stemmed from her relationship with her foster parents. While the court recognized respondent had a bond with K.H., it concluded K.H.'s need for permanence took precedence, given "the length of the case." Moreover, Benedict's testimony showed K.H. had two biological siblings residing with her in the foster home. It was Benedict's opinion that respondent's parental rights should be terminated. The basis for this opinion was the lack of timeliness in completing her services and that K.H. was well bonded and doing well in her current placement.

¶ 23        Respondent further alleges "the evidence supported that the home K.H. was placed in had her older siblings engaging in sexualized behavior." However, Benedict testified the matter was being addressed by both the foster parents and the siblings' counselor. Further, in its ruling, the trial court observed that "it is concerning if there is some type of sexualized behavior with another sibling and somebody else, but there was no evidence that [K.H.] has been exposed to that,

or it also is not provided to me that *** steps have not been taken *** to address those behaviors."

¶ 24　　　　Understandably, respondent wishes to remain in K.H.'s life. However, the focus of the best-interest portion of termination proceedings is on the child's best interest. *D.T.*, 212 Ill. 2d at 364. "The issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated." (Emphases in original.) *D.T.*, 212 Ill. 2d at 364. All told, the evidence in the record shows K.H. is in a good home, her needs are being met, and she is taken care of by people who love her. Such evidence supports the trial court's decision that terminating respondent's parental rights served K.H.'s best interest. The court's decision is therefore neither unreasonable nor arbitrary. See *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16 (stating a trial court's decision is against the manifest weight of the evidence only when the opposite conclusion is apparent or when the decision is unreasonable, arbitrary, or not based on evidence). Thus, we conclude the trial court's best-interest finding was not against the manifest weight of the evidence because we cannot say that the evidence adduced clearly calls for the opposite conclusion.

¶ 25　　　　　　　　　　　　III. CONCLUSION

¶ 26　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 27　　　　Affirmed.